LOCATION REALTY, INC. *v.* FRANK COLACCINO ET AL.
(SC 18024)

Norcott, Katz, Palmer, Vertefeuille and Schaller, Js.

---

Argued March 12—officially released July 8, 2008

*James W. Oliver*, for the appellants-appellees (named defendant et al.).

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellee-appellant (plaintiff).

*Opinion*

KATZ, J. The defendants, Frank Colaccino, the Colvest Group, Ltd., and Colvest/North Haven, LLC,[1] and the plaintiff, Location Realty, Inc., appeal and cross appeal, respectively, from the judgment of the trial court, after a bench trial, awarding the plaintiff, Location Realty, Inc., certain real estate commissions on the basis of unjust enrichment. In their appeal, the defendants claim that the trial court improperly determined that General Statutes (Rev. to 1999) § 20-312 (b)[2] and General Statutes (Rev. to 1999) § 20-325a (a) through (d), as amended by Public Acts 2000, No. 00-160, § 2 (P.A. 00-160),[3] which dictate the conditions under which

[1] The plaintiff also had named as defendants Anthony Fonda and AFAR, LLC, the parties with whom the plaintiff originally had entered into a real estate brokerage contract for the property at issue in this appeal, but the trial court rejected the plaintiff's claim for damages against them. The plaintiff does not challenge that determination in this appeal. Accordingly, Fonda and AFAR, LLC, are not parties to this appeal. We refer to them in this opinion collectively as Fonda. References herein to the defendants are to Colaccino, Colvest Group, Ltd., and Colvest/North Haven, LLC.

[2] General Statutes (Rev. to 1999) § 20-312 (b) provides: "No partnership, association or corporation shall be granted a real estate broker's license, unless every member or officer of such partnership, association or corporation who actively participates in its real estate brokerage business holds a license as a real estate broker, and unless every employee who acts as salesperson for such partnership, association or corporation and every salesperson who is affiliated with such partnership, association or corporation as an independent contractor holds a license as a real estate salesperson. A partnership, association or corporation shall designate in its application the individual who is to serve as broker under the license."

[3] General Statutes (Rev. to 1999) § 20-325a, as amended by P.A. 00-160, § 2, provides in relevant part: "(a) No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time the person performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state, after October 1, 1971, to recover any commission, compensation or other payment with respect to any act done or service rendered by the person, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter.

"(b) No person, licensed under the provisions of this chapter, shall commence or bring any action with respect to any acts done or services rendered after October 1, 1995, as set forth in subsection (a), unless the acts or

real estate commissions may be recovered, do not bar

services were rendered pursuant to a contract or authorization from the person for whom the acts were done or services rendered. To satisfy the requirements of this subsection any contract or authorization shall: (1) Be in writing, (2) contain the names and addresses of the real estate broker performing the services and the name of the person or persons for whom the acts were done or services rendered, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization, (5) be signed by the real estate broker or the real estate broker's authorized agent, (6) if such contract or authorization pertains to any real property, include the following statement: 'THE REAL ESTATE BROKER MAY BE ENTITLED TO CERTAIN LIEN RIGHTS PURSUANT TO SECTION 20-325a OF THE CONNECTICUT GENERAL STATUTES', and (7) be signed by the person or persons for whom the acts were done or services rendered or by an agent authorized to act on behalf of such person or persons, pursuant to a written document executed in the manner provided for conveyances in section 47-5, except, if the acts to be done or services rendered involve a listing contract for the sale of land containing any building or structure occupied or intended to be occupied by no more than four families, be signed by the owner of the real estate or by an agent authorized to act on behalf of such owner pursuant to a written document executed in the manner provided for conveyances in section 47-5.

"(c) Notwithstanding the provisions of subsection (b) of this section, no person licensed under the provisions of this chapter, shall commence or bring any action with respect to any acts done or services rendered after October 1, 2000, in a commercial real estate transaction, unless the acts or services were rendered pursuant to (1) a contract or authorization meeting the requirements of subsection (b) of this section, or (2) a memorandum, letter or other writing stating for whom the licensee will act or has acted, signed by the party for whom the licensee will act or has acted in the commercial real estate transaction, the duration of the authorization and the amount of any compensation payable to the licensee, provided (A) the licensee provides written notice to the party, substantially similar to the following: 'THE REAL ESTATE BROKER MAY BE ENTITLED TO CERTAIN LIEN RIGHTS PURSUANT TO SECTION 20-325a OF THE CONNECTICUT GENERAL STATUTES' and (B) the notice is provided at or before the execution of the contract, authorization, memorandum, letter or other writing, and may be made part of the contract, authorization, memorandum, letter or other writing.

"(d) Nothing in subsection (a) of this section, subdivisions (2) to (7), inclusive, of subsection (b) of this section or subsection (c) of this section shall prevent any licensee from recovering any commission, compensation or other payment with respect to any acts done or services rendered, if it would be inequitable to deny such recovery and the licensee (1) has substantially complied with subdivisions (2) to (7), inclusive, of subsection (b) of this section or (2) with respect to a commercial real estate transaction,

the plaintiff from seeking recovery of the commissions under the common law. In its cross appeal, the plaintiff claims that the trial court improperly determined that the defendants were not liable for the full amount of the commission owed under a listing agreement between the plaintiff and another real estate developer and prior party to the action, Anthony Fonda. See footnote 1 of this opinion. We agree with the defendants and, accordingly, we reverse the judgment of the trial court.

The trial court reasonably found the following facts. At all times pertinent to this appeal, the plaintiff possessed a real estate broker's license. The plaintiff's president, Michael O'Brien, was licensed only as a real estate salesperson.[4] In 1999, Fonda entered into option agreements with the owner of commercial property on Washington Street in North Haven for the possible purchase and development of that property. The plaintiff was the real estate broker for the owner of the property at issue. The plaintiff and Fonda subsequently entered into a listing agreement for a one year term, from June 1, 2000, to June 30, 2001, under which the plaintiff would receive commissions for obtaining tenants for the property. The plaintiff thereafter negotiated lease agreements with two tenants, CVS pharmacy (CVS) and Liberty Bank, during which negotiations Fonda also was represented by his attorney, Peter Alter. Fonda signed the lease with CVS, which set forth a specific date by which he would purchase the property, but he never signed the lease with Liberty Bank.

Fonda subsequently decided not to pursue the project. In or about December, 2000, the defendants dis-

has substantially complied with subdivisions (2) to (6), inclusive, of subsection (b) of this section or subdivision (2) of subsection (c) of this section. . . ."

All references to § 20-325a in this opinion are to the 1999 revision, as amended by P.A. 00-160.

[4] In or about October, 2001, after the transactions that are the subject of the present case ended, O'Brien obtained his real estate broker's license.

cussed with Fonda their taking over development of the property. The defendants paid Fonda approximately $120,000 for costs he had expended on the preliminary development of the project, such as engineering fees, but did not execute any written agreement with him with respect to any obligations related to the property. By this time, Fonda's options to purchase the property had expired. The defendants entered into a purchase and sale agreement with the owner of the property, for which the plaintiff received a commission. By then, the acquisition date set forth in the CVS lease for Fonda to purchase the property also had expired.

At about the same time that the defendants purchased the property, the plaintiff wrote to Fonda and Alter, stating that it would "require written acknowledgement that the lease commissions will be paid as called for in the exclusive listing agreement." The plaintiff never received any response to, nor followed up on, this correspondence. At a meeting in Colaccino's office in January, 2001, however, O'Brien and Colaccino orally agreed that Colaccino would pay him the commissions on the leases,[5] but O'Brien did not thereafter memorialize that

---

[5] In finding this fact, the trial court apparently relied on the following testimony from O'Brien elicited during the defendant's cross-examination:

"Q. Let me show you [the February, 2001 letter] . . . . You already testified about this. . . . You seem to be writing to Mr. Fonda asking for reassurance by [Fonda] that [Colaccino] is going to pay you your leasing commissions, correct?

"A. Yes.

"Q. But you never wrote to [Colaccino] asking him whether he would pay you leasing commissions, did you?

"A. My contract was with [Fonda].

"Q. That's right. Your contract was with [Fonda]. Okay. Your contract wasn't with [Colaccino] or Colvest Group [Ltd.], was it?

"A. No. It was not.

"Q. Yeah. In fact you never entered into a new leasing contract with [Colaccino] or Colvest Group [Ltd.], did you?

"A. No. . . .

"Q. [It's] your [testimony] that it was at that meeting [in January, 2001] that you and [Colaccino] agreed to modify the commission schedule for leases, correct?

agreement in a confirmation letter to Colaccino because he felt it was unnecessary to do so in light of the plaintiff's listing agreement with Fonda.[6] In February, 2001, the defendants executed leases with CVS and Liberty Bank that were substantially the same as those that the plaintiff had negotiated for Fonda and that listed the plaintiff and O'Brien as the broker.[7] After the defendants acquired the property and executed the leases, the plaintiff wrote to the defendants to demand its commissions. The defendants informed the plaintiff that there had been no agreement between them and refused to pay these commissions. This action followed.

The record also reflects the following procedural history. On or about March 26, 2003, the plaintiff filed a five count amended complaint against Fonda and the defendants, alleging breach of the listing agreement, unjust enrichment and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. In response, the defendants raised nine special defenses alleging, inter alia, that the commission was barred because the plaintiff's president, O'Brien, was not a licensed real estate broker in accordance with the requirements of § 20-312 (b), and because there was no writing between the plaintiff and the defendants

"A. Yes."

[6] There was conflicting testimony as to whether there was such an oral agreement to modify the leases. O'Brien testified that there was such an agreement; see footnote 5 of this opinion; but Colaccino testified that he had not agreed to modify the leases at the January, 2001 meeting and, instead, had told O'Brien: "[I]t was not reasonable for [O'Brien] to expect to get paid a commission on the CVS lease and the Liberty Bank lease after he was already getting a commission of [$135,000 to $140,000] on the purchase of the land. It just didn't make the deal economical."

[7] Although the plaintiff offered bank documents submitted by the defendants in connection with the project and the leases contained a budget item estimating $215,000 for real estate commissions to show that the defendants had agreed to pay the plaintiff the commissions, Colaccino testified that this amount was not relevant to the commissions for the CVS and Liberty Bank leases.

in accordance with the requirements of § 20-325a (b).[8] Thereafter, the trial court, *Miller, J.*, granted the defendants' motion for summary judgment on the CUTPA claim.

After a bench trial, the court, *Stengel, J.*, rendered judgment in favor of the plaintiff only as to the count alleging unjust enrichment. As to the plaintiff's counts seeking recovery under the listing agreement between Fonda and the plaintiff, the court concluded that this agreement met the statutory requirements of § 20-325a (b) and (c), but the plaintiff had failed to prove that there was a valid assignment of Fonda's obligations under the listing agreement to the defendants. Thus, the plaintiff could not recover any commissions owed to it under that agreement. The court also rejected the plaintiff's claim that the defendants were equitably estopped from contesting their obligation to pay the commissions because it concluded that the plaintiff had not pointed to any conduct by the defendants in regard to the listing agreement that the plaintiff had relied upon to its detriment. The trial court concluded, however, that the plaintiff could recover under a theory of unjust enrichment: "[The] [p]laintiff has established

---

[8] Specifically, the defendants' special defenses alleged that the plaintiff is barred from recovering the commission: (1) for failure to enter into a written listing agreement pursuant to § 20-325a (b); (2) for failure to comply with certain dual brokerage disclosure requirements pursuant to General Statutes §§ 20-325d and 20-325i; (3) because the plaintiff had failed to enter into a required dual agency consent agreement pursuant to General Statutes § 20-325g; (4) generally by the statute of frauds, General Statutes § 52-550; (5) by the statute of frauds specifically because the listing agreement between the plaintiff and Fonda never had been assigned to the defendants; (6) under the doctrine of unclean hands because the plaintiff had failed to comply with the statutory requirements of §§ 20-325a, 20-325d and 20-325i; (7) because the plaintiff did not hold a valid real estate broker's license pursuant to § 20-312 (b) at the time that it entered into the listing agreement with Fonda; (8) because the plaintiff did not hold a valid real estate broker's license pursuant to § 20-312 (b) at the time that it rendered services; and (9) on the basis of unjust enrichment, verbal contract, and the CUTPA because of the preclusive effect of § 20-325a.

that [the defendants] had received a benefit, that [they] knowingly accepted, at the expense of [the] plaintiff under circumstances that would make it unjust for [the defendants] to retain the benefit. The court finds that it would be inequitable to deny the plaintiff the right to recover commissions that it otherwise earned." The trial court rejected the defendants' contention that, under this court's holding in *Location Realty, Inc.* v. *General Financial Services, Inc.*, 273 Conn. 766, 780–81, 873 A.2d 163 (2005), the balancing of equities required under § 20-325a weighed against permitting any recovery because O'Brien had not been licensed as a real estate broker. The court found that there was no evidence that O'Brien wilfully had violated the statutory licensure requirement. The trial court did not consider expressly, however, whether § 20-235a otherwise precluded the plaintiff from recovering under the common law.

Lastly, the trial court turned to the question of damages. The court determined that the plaintiff was not entitled to the approximately $145,000 in commissions that it would have been owed under the terms of the listing agreement, but, instead, was entitled to $125,000 because O'Brien and Colaccino had discussed that lower commission at their January, 2001 meeting.

Thereafter, the trial court denied the defendants' request for an articulation of the basis of various factual findings in its memorandum of decision. The defendants appealed, and the plaintiff cross appealed, from the trial court's judgment to the Appellate Court, and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

In their appeal, the defendants contend that the trial court improperly permitted the plaintiff to recover a commission under the common-law theory of unjust enrichment despite the court's determination that there had been no substantial compliance with the requirements of § 20-325a. Specifically, the defendants contend that they were not a party to any written agreement satisfying the requirements of the statute and that the plaintiff was not a duly licensed real estate broker because its president did not possess a real estate broker's license at the time of the transaction. The defendants further claim that the trial court either applied the wrong standard to, or failed to rule on, other special defenses. The plaintiff responds that the listing agreement between it and Fonda and subsequent correspondence, documents and oral exchanges acknowledging that the defendants were taking over the project amount to substantial compliance with either § 20-325a (b) or (c), which, coupled with the trial court's finding that it would be inequitable to deny the plaintiff a commission, permit recovery under that statute. Specifically, the plaintiff points to various paragraphs in the leases executed by the defendants with CVS and Liberty Bank that reference the plaintiff as the broker and the lessors' obligation to pay a commission pursuant to a letter agreement, as well as a reference to brokerage commissions in the "budget review" that the defendants submitted to People's Bank in connection with financing it sought for the project to the People's Bank. In its cross appeal, the plaintiff claims that the trial court improperly failed to award $145,712.50, the full amount of damages owed according to the terms of the listing agreement between the plaintiff and Fonda. We agree with the defendants' principal claim and therefore do not reach the remaining issues raised by either party.

Because the defendants' claim is premised on the view that no recovery may be had unless there is substantial compliance with § 20-325a, we first must consider to what extent the plaintiff satisfied the requirements of that statute. If we conclude that it did not meet those requirements, we then must turn to the question of whether equitable recovery nonetheless is permitted under the theory of unjust enrichment. To the extent that we are required to review conclusions of law or the interpretation of the relevant statute by the trial court, we engage in plenary review. *State* v. *Winer*, 286 Conn. 666, 676, 945 A.2d 430 (2008). We review the court's factual findings, however, under a clearly erroneous standard. *Fleming* v. *Bridgeport*, 284 Conn. 502, 511, 935 A.2d 126 (2007).

I

To determine whether recovery is permitted under § 20-325a, we first note that the applicable version of the statute is the one in effect at the time of the transaction at issue from December, 2000 to early 2001.[9] *M.R. Wachob Co.* v. *MBM Partnership*, 232 Conn. 645, 658–59, 656 A.2d 1036 (1995) (applying version of statute in effect at time of events forming basis for action). For purposes of the present case, there was an amendment to the statute effective October 1, 2000; see P.A. 00-160; which, we note, has particular significance to this case. Thus, the relevant version of the statute is General Statutes (Rev. to 1999) § 20-325a, as amended by P.A. 00-160.[10]

---

[9] We note that the defendants' brief to this court cites to the revision of the statute in effect prior to the amendment by P.A. 00-160. They have provided no reason, however, why this revision should apply to this case, as the defendants did not become involved in the transaction until December, 2000, and they claim not to have been assigned Fonda's obligations under his listing agreement with the plaintiff that predates that period.

[10] See footnote 3 of this opinion for the complete text of § 20-325a.

We begin with the pertinent text of § 20-325a, setting forth the requirements for the recovery of commissions in real estate transactions. Subsection (a) of that statute addresses persons "not licensed under the provisions of this chapter" and provides that such persons may not "recover any commission, compensation or other payment with respect to any act done or service rendered by the person, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter," while subsection (b) addresses persons "licensed under the provisions of this chapter" and prohibits such person from bringing any action with respect to services rendered, unless those services were performed "pursuant to a contract or authorization from the person for whom the acts were done or services rendered." General Statutes (Rev. to 1999) § 20-325a (a) and (b), as amended by P.A. 00-160. Subsection (b) then sets forth seven specific requirements for any agreement for a real estate commission.

Subsections (c) and (d) of § 20-325a, however, create some exceptions to the foregoing requirements. Subsection (c) provides that, "in a commercial real estate transaction," a "person licensed under the provisions of this chapter" may not commence an action related to "acts done or services rendered after October 1, 2000" unless there is a writing "meeting the requirements of subsection (b)" *or* "a memorandum, letter or other writing stating for whom the licensee will act or has acted, signed by the party for whom the licensee will act or has acted in the commercial real estate transaction, the duration of the authorization and the amount of any compensation payable to the licensee . . . ." General Statutes (Rev. to 1999) § 20-325a (c), as amended by P.A. 00-160. Thus, there is a more flexible standard for a writing in commercial real estate transactions than that which applies to noncommercial transactions.

Most significant for purposes of the present case, subsection (d) provides: "Nothing in subsection (a) of this section, subdivisions (2) to (7), inclusive, of subsection (b) of this section or subsection (c) of this section shall prevent any licensee from recovering any commission, compensation or other payment with respect to any acts done or services rendered, *if it would be inequitable to deny such recovery and the licensee (1) has substantially complied with subdivisions (2) to (7), inclusive, of subsection (b) of this section or (2) with respect to a commercial real estate transaction, has substantially complied with subdivisions (2) to (6), inclusive, of subsection (b) of this section or subdivision (2) of subsection (c) of this section.*" (Emphasis added.) General Statutes (Rev. to 1999) § 20-325a (d), as amended by P.A. 00-160. Therefore, subsection (d) provides that, when, as in the present case, there is no strict compliance with the requirements of subsections (a), (b) and (c), an action for a real estate commission under § 20-325a nonetheless may proceed if two preconditions are met: (1) there has been substantial compliance with the requirements relevant to the transaction; and (2) the facts and circumstances of a case would make it inequitable to deny recovery.[11] As both parties agree that there has not been strict compliance, we examine whether both preconditions to the exception have been satisfied.

As an initial matter, we note that the parties have devoted much attention in their briefs to the issue of how significant a factor it should be that, because O'Brien was not a licensed broker when acting on the

[11] The use of the conjunctive "and" in § 20-325a (d) indicates that, even if denial of recovery would be inequitable, a licensed broker may not recover a commission in a commercial real estate transaction if there is not substantial compliance with the specific requirements under subsections (b) or (c). See *Penn* v. *Irizarry*, 220 Conn. 682, 687, 600 A.2d 1024 (1991) ("[t]he use of the conjunctive, 'and,' indicates that both conditions must be fulfilled" before relief under statute may be afforded).

plaintiff's behalf as required under § 20-312 (b), the plaintiff was not duly licensed at the time of the transaction at issue.[12] See *Location Realty, Inc.* v. *General Financial Services, Inc.*, supra, 273 Conn. 777.[13] We previously have concluded, in another case involving this same plaintiff, that "a corporate broker licensee, whose president was not licensed as a broker, may not be denied its right to recover a commission otherwise earned *solely* because of that licensing failure. Its right to recover must be gauged, instead, under all of the facts and circumstances of the case and whether it would be inequitable, in light of those facts and circumstances, to deny it the right to recover. One of those facts and circumstances is, of course, that the licensee may not have been duly licensed; but that fact alone is not sufficient to deny recovery." (Emphasis added.)

---

[12] The defendants also allege that none of those listed as officers in the plaintiff's corporation were licensed brokers at relevant times when the plaintiff submitted license documents to the state. We also need not address this contention in light of our conclusion.

[13] We construed what is now § 20-325a (d) in *Location Realty, Inc.* v. *General Financial Services, Inc.*, supra, 273 Conn. 771–81. In that case, the plaintiff, the same entity as in the present action, entered into a listing agreement with the defendant concerning property in the town of Berlin. Id. The defendant alleged that the plaintiff could not recover under § 20-325a (a) because it was not duly licensed. Id., 770. The defendant alleged that, although the plaintiff had a license, its president, O'Brien, who actively had participated in the transaction, did not. Id. The trial court had rendered summary judgment in favor of the defendant. Id., 768.

On appeal, this court concluded that § 20-325a (a) requires that a person be *duly* licensed in order to bring an action to cover a commission. Id., 777. The court concluded that, a broker "whose president was actively involved in its brokerage business but was not licensed as a broker, was not duly licensed within the meaning of § 20-325a (a)." Id. We concluded, however, that both the text and the legislative history of subsection (d), which at the relevant time in that case was codified as subsection (c), indicated that such an entity still might recover depending on a review of the "facts and circumstances of the case." Id., 779–80. We concluded, therefore, that the plaintiff could not be denied recovery "solely because of [its] licensing failure." Id., 781. Instead, a determination must be made under all of the facts and circumstances in a given case whether it would be inequitable to deny recovery. Id.

Id., 781. Thus, while O'Brien's license status would be relevant for purposes of balancing the equities, we need not determine, when reviewing the trial court's conclusions in this regard, how significant it is that the plaintiff was not duly licensed under § 20-325a (a), because we conclude that the plaintiff did not substantially comply with any of the requirements of the other subsections.

Because the present case involves a commercial real estate transaction, under § 20-325a (c), the plaintiff must substantially comply with the requirements of either subsection (b) or subsection (c) (2). According to the facts that the trial court found, the plaintiff has complied with *none* of those requirements. There is no writing between the broker and the person receiving the services, with the relevant dates, with the terms of authorization, signed by both the broker and the person receiving the services, or containing the requisite disclaimer regarding lien rights. See General Statutes (Rev. to 1999) § 20-325a (b) (2) through (7), as amended by P.A. 00-160. Nor, was there any compliance with the more flexible criteria for a writing under subsection (c) (2), which merely requires a "memorandum, letter or other writing stating *for whom the licensee will act or has acted,* signed by the party for whom the licensee will act or has acted in the commercial real estate transaction, the duration of the authorization and the amount of any compensation . . . ." (Emphasis added.) General Statutes (Rev. to 1999) § 20-325a (c) (2), as amended by P.A. 00-160. In other words, with no writing between the defendants and the plaintiff whatsoever, the plaintiff has failed to comply with both subsection (b) and subsection (c) (2) of § 20-325a. Accordingly, we agree with the defendants' contention that, "[b]ased upon the trial court's own factual findings there could be no compliance—let alone—'substantial compliance' with [§ 20-325a (b) and (c) (2)]."

The plaintiff's contention that there was an oral assignment to the defendants of rights under the listing agreement between the plaintiff and Fonda is of no avail.[14] Although subsection (d) permits recovery under an agreement that substantially complies with the various requirements of § 20-325a, the statute clearly contemplates *written* agreements only. Section 20-325a, unlike the statute of frauds, General Statutes § 52-550, contains no exception for oral agreements. Indeed, this court has recognized that listing agreements "are governed exclusively by § 20-325a [and] such contracts do not fall within our statute of frauds." *William Pitt, Inc.* v. *Taylor*, 186 Conn. 82, 84, 438 A.2d 1206 (1982). Thus, even if the agreement at issue were to fall within an exception to the statute of frauds for parole agreements, the plaintiff still would be required to satisfy § 20-325a to bring this action. Because the plaintiff cannot meet the first of two requirements for recovery under subsection (d)—i.e., substantial compliance—the trial court properly concluded that it could not recover pursuant to the statute.

---

[14] The plaintiff's argument that the listing agreement applies to the defendants because it contains a term stating that it is binding on "assigns" must fail because there is no modification or other agreement specifically designating the defendants as "assigns." Indeed, the modification clause of the listing agreement expressly requires that any such assignment would had to have been in writing: "This [a]greement . . . may be modified, waived or discharged only by an agreement in writing signed by both parties." There was no written agreement between Fonda and the defendants or between the plaintiff and the defendants according to which the defendants agreed to assume Fonda's duties under the listing agreement. Thus, even if we were to assume that the obligations under the listing agreement, which one could argue related to different leases than those ultimately executed, were assignable, we have no written instrument that describes the assignee and "subject matter of the assignment . . . with such particularity as to render it capable of identification." (Internal quotation marks omitted.) *Dysart Corp.* v. *Seaboard Surety Co.*, 240 Conn. 10, 17, 688 A.2d 306 (1997) (plaintiff was not assignee of right to sue on labor and material payment bond according to General Statutes § 49-42 by virtue of employees endorsing their paychecks to plaintiff because mere endorsement did not describe subject matter with sufficient particularity so as to render it identifiable).

## II

Having concluded that the plaintiff may not seek to recover pursuant to § 20-325a, we next determine whether the trial court properly concluded that the equitable remedy of unjust enrichment is available. See *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573, 898 A.2d 178 (2006) ("[u]njust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract" [internal quotation marks omitted]). The plaintiff contends that an equitable remedy exists under § 20-325a. We note that the statute neither expressly embraces that remedy nor expressly disclaims it. See General Statutes (Rev. to 1999) § 20-325a (d), as amended by P.A. 00-160. Thus, we must determine whether the legislature intended to preserve the common-law equitable remedy of unjust enrichment when it enacted the statute.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles

governing the same general subject matter . . . ." (Internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 261, 932 A.2d 1053 (2007).

Moreover, we are mindful of other rules of statutory construction applicable when determining whether a statute has abrogated the common law. "[W]hen a statute is in derogation of common law . . . it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. . . . Although the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed. . . . The rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of continuity and stability in the legal system as the doctrine of stare decisis in relation to case law." (Internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 426–27, 927 A.2d 843 (2007). Our review on this issue is plenary. *State* v. *Winer*, supra, 286 Conn. 676.

We begin with the text of § 20-325a. Subsections (a), (b) and (c) each specifically provide that "[n]o person," whether licensed or unlicensed, "shall commence or bring *any* action" to recover for acts done or services rendered absent certain preconditions. (Emphasis added.) General Statutes § 20-325a (a), (b) and (c), as amended by P.A. 00-160. The phrase "any action," in conjunction with the phrase "no person," is one of the broadest possible formulations and evinces, in the absence of limitation or qualification, an intent to pre-

clude actions from proceeding outside of the statutory scheme. See *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 14–15, 938 A.2d 576 (2008) (reading "any" in conjunction with words "without limitation" in contract dispute to have expansive meaning); *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 414, 908 A.2d 1033 (2006) (noting that meaning of "any" is context dependent but concluding, with regard to General Statutes § 22a-19, that "the repeated use . . . of the word 'any' . . . indicates an intention to allow the broadest possible range of parties to intervene in an expansive spectrum of proceedings"); *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 531, 839 A.2d 1250 (2004) (noting that "any" is ambiguous term that, depending on "context" and "subject matter of the statute" may denote "all, every, some or one" [internal quotation marks omitted]); see also *Barrett Builders* v. *Miller*, 215 Conn. 316, 321–22, 576 A.2d 455 (1990) (noting "broader" formulation of "any action" in § 20-325a when deciding to preclude equitable remedies under more narrowly drawn Home Improvement Act, General Statutes § 20-418 et seq.).

Even before § 20-325a was amended to allow for substantial compliance, the Appellate Court had construed the language to be exclusive with regard to its treatment of listing agreements and to preclude common-law actions. See *Goldblatt Associates* v. *Panza*, 24 Conn. App. 250, 253–54, 587 A.2d 433 (1991) (concluding that "[l]isting contracts are governed exclusively by [§] 20-325a" and if listing agreement is not in compliance with § 20-325a, then "broker is precluded from recovering in quantum meruit"); *Currie* v. *Marrano*, 13 Conn. App. 527, 532–33, 537 A.2d 1036 (rejecting plaintiff's theory of unjust enrichment because, unlike statute of frauds, § 20-325a contains no exception for oral agreements and other states have precluded equitable recovery under similar statutes), cert. denied, 207 Conn. 809, 541

A.2d 1238 (1988); see also *Barrett Builders* v. *Miller,*
supra, 215 Conn. 331–32 (*Shea, J.,* dissenting) ("the
provision of . . . § 20-325a (b) declaring that [n]o per-
son . . . shall commence or bring any action in respect
of any acts done or services rendered as a real estate
broker pursuant to a nonconforming contract has been
construed [by the Appellate Court in *Currie*] to bar the
recovery of a commission under the doctrine of unjust
enrichment, not only because of its explicit all-encom-
passing language, but also because such a recovery
would allow a broker to receive the same amount of
compensation payable under his nonconforming
agreement without complying with the statute" [inter-
nal quotation marks omitted]).

We need not decide whether we agree with the Appel-
late Court's somewhat abbreviated discussion as to the
availability of equitable remedies in those cases, how-
ever, because the statute was amended later to include
subsection (d), which is applicable to and bears signifi-
cantly on the issue before us.[15] As we have noted, the
text of that subsection provides: "Nothing in subsec-
tion[s (a), (b) and (c)] . . . shall prevent any licensee
from recovering any commission . . . if it would be
inequitable to deny such recovery and the licensee (1)
has substantially complied with [relevant requirements]
. . . ." General Statutes (Rev. to 1999) § 20-325a (d),
as amended by P.A. 00-160. In carving out this excep-

---

[15] We acknowledge that the legislature may have added what is now sub-
section (d) to provide a statutory equitable remedy in response to this court's
conclusion in *William Pitt, Inc.* v. *Taylor,* supra, 186 Conn. 84, that § 20-
325a is the exclusive remedy for listing contracts and the Appellate Court's
conclusion that common-law equitable remedies are precluded by the stat-
ute. Because none of those cases performed a full statutory analysis, how-
ever, we do not rest our decision today on this basis. Rather, in light of the
analysis of subsection (d) that we began in *Location Realty, Inc.* v. *General
Financial Services, Inc.,* supra, 273 Conn. 771–81, we proceed to examine
that subsection and its implications for the issue in the present case
more closely.

tion, the legislature clearly intended that the statutory requirements had to be met to *some* extent, which, as we concluded in part I of this opinion, did not occur in the present case. By further providing, however, that the licensee must satisfy the type of equitable considerations necessary for recovery under a theory of unjust enrichment; see *Cecio Bros., Inc.* v. *Greenwich*, 156 Conn. 561, 569, 244 A.2d 404 (1968); the legislature has, by necessary implication, eliminated the option of a separate equitable recovery under that theory absent substantial compliance.

To construe the statute otherwise to permit a separate action in equity under any circumstance would allow a broker to circumvent § 20-325a (a) through (c) altogether and thus recover the alleged commission with or without complying with licensure requirements and with or without executing some type of writing. It is axiomatic that we do not interpret a statute in a way that would so blatantly thwart its purpose. *In re William D.*, 284 Conn. 305, 317, 933 A.2d 1147 (2007). As we have noted in other contexts, common-law remedies are not appropriate where their application would eviscerate the force of the provisions of the statute. See, e.g., *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 191, 592 A.2d 912 (1991) (declining to permit common-law tort remedy that would effectively render null and void statute providing damages for injury caused by defect in road or bridge and thwart its purpose despite rule of strict construction); *Barrett Builders* v. *Miller*, supra, 215 Conn. 322–28 (declining to permit contractor who had failed to comply with Home Improvement Act's written contract requirement to recover in quasi contract because to do so would be to create exception to writing requirement and would do damage to public policy embodied in statute of protecting consumers).

While our examination of the text strongly supports the proposition that the legislature evinced an intent to incorporate a common-law equitable remedy into the statute, the text by no means expressly and unambiguously indicates that the statute precludes separate equitable remedies in derogation of the common law. We, therefore, turn to its legislative history for clarification.

Although we have discussed the pertinent sections of the operative statute previously herein, we consider the following historical background. Section 20-325a originally was enacted in 1971, and that simpler revision of the statute included a section prohibiting those not duly licensed from recovering a commission and a section setting forth five requirements for a written agreement between a licensee and an individual or entity receiving real estate brokerage services. Public Acts 1971, No. 378, § 1.[16] Thereafter, the legislature made various changes to the requirements in what is

[16] Our review of the legislative history of these provisions has revealed nothing to indicate that the legislature intended to preserve common-law equitable remedies with its enactment of § 20-325a and subsequent amendments thereto. The legislative history to the 1971 Public Act reflects that the statute was meant to ensure that "no commission's fees or renumeration may [be] recovered in a court of law for real estate transaction unless the full terms of an agreement are signed by both parties . . . . These terms would be in writing with [the] names and addresses of all parties . . . ." 14 H.R. Proc., Pt. 6, 1971 Sess., p. 2783, remarks of Representative Albert S. Crockett. As one legislator noted: "The [c]ourts are quite often filled with cases concerning disputes over real estate commissions and conditions under which the brokers were engaged to perform. This law spells it out and really clarifies a great number of problems." 14 S. Proc., Pt. 5, 1971 Sess., p. 2316, remarks of Senator William J. Sullivan. During committee hearings on the bill that later became No. 378 of the 1971 Public Acts, David Kotkin, who represented the Connecticut Association of Real Estate Boards, confirmed this problem when he stated that, whether the requirements were different for commercial real estate transactions and those involving homeowners, there should be "at least something in writing to indicate that the owner of the property did consent to the property being listed." Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1971 Sess., p. 230. Thus, at a minimum, the legislature intended that these transactions had to be memorialized in a writing in compliance with the statute.

now subsection (b). See, e.g., Public Acts 1984, No. 84-137, § 1 (permitting parties to listing agreement or their duly authorized agents to sign agreement); Public Acts 1993, No. 93-355, § 1 (adding notification provision concerning real estate broker's liens to writing requirements in subsection [b] and seven other new subsections).

The most significant change for purposes of the present case occurred in 1994, when the legislature added what is now subsection (d), the exception permitting recovery for those persons who substantially had complied with the requirements of the statute provided that the equities balanced in their favor. Public Acts 1994, No. 94-240, § 3. The legislative history of that provision specifically indicates that the real estate industry brought concerns about unjust enrichment to the legislature's attention. As a representative of the Connecticut real estate commission stated in a committee hearing with regard to that amendment: "[T]he proposed changes expand [§] 20-325[a] so that if a broker in a real estate transaction has substantially complied with the provisions of this . . . section, the broker will be permitted to pursue their claims for payment of the [licensee's] fees in our court system. Right now, under [§] 20-325[a], if as much as a date the listing contract or authorization to ask for another is deleted from that listing agreement . . . [the licensee is barred] from going to court to seek payment of the commission and often this has resulted in unjust enrichment to various sellers of properties." Conn. Joint Standing Committee Hearings, Insurance and Real Estate, Pt. 1, 1994 Sess., p. 91, remarks of Larry Hannafin.

We made, and relied on, the same observation in *Location Realty, Inc.* v. *General Financial Services, Inc.*, supra, 273 Conn. 780–81, when we specifically examined the legislative history of the 1994 amendment. We stated: "The legislative history [of now § 20-325a (d)] indicates that the proposal was brought forth in

response to certain decisions of this court that strictly construed the requirements of § 20-325a (b), namely, the formal requirements of a listing agreement, and denied brokers the right to recover for failures of strict compliance therewith. See, e.g., *M.R. Wachob Co.* v. *MBM Partnership*, [supra, 232 Conn. 658–62]; Conn. Joint Standing Committee Hearings, supra, p. 91. That history indicates that the task force that drafted the legislation considered that the strict construction of subsection (b) of § 20-325a *had resulted in some cases of 'unjust enrichment.'* Conn. Joint Standing Committee Hearings, supra, p. 91. This history, in turn, also suggests that the question of recovery, despite a failure to comply strictly with subsection (a) of § 20-325a, must be determined on the basis of all of the facts and circumstances of the case. See, e.g., *Crowell* v. *Danforth*, 222 Conn. 150, 158, 609 A.2d 654 (1992) ('[u]njust enrichment requires a factual examination of the circumstances and of the conduct of the parties' . . . )." (Emphasis added.) *Location Realty, Inc.* v. *General Financial Services, Inc.*, supra, 780–81. Thus, subsection (d) was enacted, at least in part, to deal with the precise equitable concerns at issue in claims of unjust enrichment. Put differently, by addressing the unjust enrichment problems with a statutory remedy, conditioned on substantial compliance, we conclude that the legislature declined to leave intact a common-law remedy to parties in these circumstances. We therefore conclude that substantial compliance is the sole avenue to recovery that the legislature chose to provide in circumstances wherein the strict construction of § 20-325a would lead to unfair results or unjust enrichment.

For the foregoing reasons, we conclude that it was improper for the trial court to award a commission to the plaintiff on a theory of unjust enrichment. Because we reverse the judgment on these grounds, we do not reach the defendants' remaining claims.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other justices concurred.