### MARIA PENA *v.* JOAN C. PETANO
### (AC 31924)

Gruendel, Robinson and Alvord, Js.

---

Submitted on briefs September 10—officially released November 2, 2010

*Timothy Sheehan* filed a brief for the appellant (substitute defendant).

*Opinion*

PER CURIAM. This case involves a dispute over a real estate commission. Following a bench trial, the trial court rendered judgment in favor of the plaintiff, Maria Pena. Although multiple claims are advanced in this appeal, only one merits discussion. The defendant Richard T. Petano, executor of the estate of Joan C.

Petano (decedent), contends that the court's determination that the plaintiff was entitled to a commission is irreconcilable with its finding that the decedent did not sign the exclusive right to sell listing contract (listing agreement) at issue.[1] We affirm the judgment of the trial court.

In its memorandum of decision, the court found the following facts, which are not disputed in the defendant's appeal. The plaintiff is a licensed real estate broker. In early December, 2007, the decedent's husband, Bruce O'Callaghan, contacted the plaintiff to discuss the possible sale of 100 Deming Street in Newington (property), which was owned by the decedent. Days later, O'Callaghan again contacted the plaintiff to formally retain her services to sell the property. Because the decedent was recovering from surgery and unable to come to the plaintiff's office, the plaintiff discussed the matter with her by telephone.[2] The plaintiff then drafted the listing agreement, which she presented to O'Callaghan on December 10, 2007. That agreement provided that the plaintiff would receive a commission of 5 percent of the sale price, unless the property was sold "in-house," in which case the commission would be "reduced to 3 [percent]." O'Callaghan left with the listing agreement, which he returned to the plaintiff later that day with the decedent's purported signature thereon. The plaintiff thereafter listed the property for sale for $239,900.

[1] The plaintiff's original complaint named Joan Petano as the defendant. The record indicates that Joan Petano died approximately five months after the action was commenced. By motion filed March 17, 2009, the plaintiff moved to substitute as the defendant Richard T. Petano, the executor of the estate of Joan Petano, which the court granted on April 2, 2009. We refer in this opinion to Richard T. Petano, executor of the estate of Joan Petano, as the defendant and to Joan Petano as the decedent.

[2] The court found that the decedent in December, 2007, had a lung removed and received chemotherapy and radiation treatment. As noted in its memorandum of decision, the decedent "was in seriously ill health when the various agreements were negotiated and executed."

On December 21, 2007, the plaintiff received a real estate purchase contract (first contract) signed by Ryan W. Perkoski, offering to buy the property for $240,000. That contract listed the plaintiff's real estate business, New Britain Realty, LLC, and Chozick Realty, Inc., as brokers. The plaintiff presented the offer to O'Callaghan, who that same day returned the contract to the plaintiff with the decedent's signature, confirming acceptance thereof.

Three days later, the plaintiff received an offer to purchase the property for $245,000 from John Gazerwitz and Dennis Damato (backup contract). The plaintiff presented this offer to the decedent and explained, both orally and in writing, that it was to be considered a backup offer only. She informed the decedent that, in order to ethically and to legally act on this backup offer, the decedent first would have to obtain a release from Perkoski, whose offer the decedent already had accepted. The decedent signed the backup contract at that time.

Unbeknownst to the plaintiff, the decedent subsequently entered into an additional contract with Gazerwitz and Damato for the sale of the property on January 12, 2008 (third contract). As the court stated in its memorandum of decision: "That agreement provided that [the decedent] would sell the subject property to [Gazerwitz and Damato] at the same price and under the same terms and conditions that were identical to those provided in the [backup contract], with one notable exception: in paragraph twenty-two, entitled 'Brokers', 'N/A' is inserted, meaning that the parties to that agreement averred, despite the brokerage language contained in the [backup contract], that there was no commission due to anyone as a result of the sale of the subject property to [Gazerwitz and Damato]. The effect of that agreement was to negate any commission to

which the plaintiff might be entitled pursuant to her exclusive listing agreement."

On February 20, 2008, the real estate transaction between the decedent and Gazerwitz and Damato closed pursuant to the terms of the third contract at the offices of attorney Nicholas DeNigris, who represented the decedent. At that time, the parties to the transaction informed DeNigris that there was no real estate broker or agent involved therein. The parties did not apprise DeNigris that they earlier had entered into the backup contract, which provided for the payment of a commission to the plaintiff.

When the plaintiff learned of this development days later, she contacted the decedent and informed her that she would accept $6100 as a commission for her services. The decedent agreed to deliver a check in that amount to DeNigris to compensate her. Accordingly, the plaintiff sent DeNigris a copy of the listing agreement and a letter requesting payment of her commission. DeNigris did not respond to the plaintiff's request. Instead, the plaintiff was contacted by attorney Timothy Sheehan on behalf of the decedent. Sheehan requested that the plaintiff refrain from harassing the decedent regarding the commission.

Three months later, the plaintiff filed this action to recover her commission pursuant to General Statutes § 20-325a. A court trial followed, at which testimonial and documentary evidence was presented. In its memorandum of decision, the court found that the "Joan Petano" signature on the listing agreement was not that of the decedent. The court nevertheless found that "the decedent was well aware of all of the transactions [concerning the sale of the property] and was well aware of and authorized the plaintiff's involvement in the sale of the subject property with the anticipation of paying

an agreed commission to the plaintiff upon the successful closing of the sale." In particular, the court emphasized the decedent's grave health at the time that the various agreements were executed and found that O'Callaghan had "acted as the go-between relative to the sale of the subject property." The court continued: "[I]t is clear to this court that although the decedent did not sign the exclusive listing agreement, she did authorize the execution of that document along with the [first contract] with Perkoski and the [backup contract with] Gazerwitz and Damato. Each of those three documents clearly reflects the obligation assumed by the decedent to pay a commission to the plaintiff. The decedent did affix her signature to the [third contract] . . . agreeing to sell the subject property under the same terms and conditions as contained in the [backup contract] but without any commission to the plaintiff. Both parties then proceeded to closing without notice to the plaintiff and without disclosing to the closing attorney, DeNigris, the plaintiff's involvement." On that basis, the court concluded that the decedent breached her contract with the plaintiff. Accordingly, it awarded the plaintiff a commission of $6100, as well as $4000 in attorney's fees pursuant to the listing agreement. From that judgment, the defendant appeals.

The defendant claims that the court improperly concluded that the plaintiff was entitled to a commission in light of its finding that the decedent did not sign the listing agreement. His claim centers on a mistaken belief that the failure to comply strictly with the seven specific requirements set forth in § 20-325a (b) governing an agreement for a real estate commission precludes recovery in any and all instances. That contention presents a question of law over which our review is plenary. See *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 717, 949 A.2d 1189 (2008).

It is true that the court found that the decedent had not signed the listing agreement as required by § 20-325a (b) (7).[3] At the same time, "[s]ubsections (c) and (d) of § 20-325a . . . create some exceptions to the foregoing requirements." Id., 718. Subsection (d) provides in relevant part that "[n]othing in subsection (a) of this section, subdivisions (2) to (7), inclusive, of subsection (b) of this section or subsection (c) of this section shall prevent any licensee from recovering any commission, compensation or other payment with respect to any acts done or services rendered, if it would be inequitable to deny such recovery and the licensee (1) has substantially complied with subdivisions (2) to (7), inclusive, of subsection (b) of this section . . . ." General Statutes § 20-325a (d). Our Supreme Court has concluded that subsection (d) thus provides that "when . . . there is no strict compliance with the requirements of subsections (a), (b) and (c), an action for a real estate commission under § 20-325a nonetheless may proceed if two preconditions are met: (1) there has been substantial compliance with the requirements relevant to the transaction; and (2) the facts and circumstances of a case would make it inequitable to deny recovery." *Location Realty, Inc.* v. *Colaccino*, supra, 287 Conn. 719.

The trial court in the present case expressly relied on that precedent in concluding that the exception set forth in § 20-325a (d) applied. In so doing, the court found that although the decedent had not signed the listing agreement as required by § 20-325a (b) (7), the other requirements of § 20-325a (b) were satisfied.[4] The court also emphasized the unique factual nature of this

[3] General Statutes § 20-325a (b) (7) requires the listing agreement to "be signed by the person or persons for whom the acts were done or services rendered or by an agent authorized to act on behalf of such person or persons . . . ."

[4] The defendant does not contest this finding on appeal.

case with respect to the decedent's illness and her husband's role in acting as "the go-between relative to the sale of the subject property." The court credited the plaintiff's testimony that she "spoke to the decedent on the telephone prior to drafting the written listing agreement and on several occasions thereafter once the two offers to purchase the property were provided to the plaintiff." The court further noted that both the first contract and the backup contract provided for a commission to the plaintiff. In addition, it found that following the sale of the property pursuant to the third contract, the decedent agreed to pay the plaintiff a $6100 commission when the plaintiff contacted her regarding the February 20, 2008 closing. Finally, the court found that "by entering into a separate agreement with Gazerwitz and Damato, which eliminated the plaintiff from the transaction, and by not disclosing to her closing attorney the existence of the [prior] agreement with those gentlemen, the decedent was able to consummate the sweeter deal, made all the more sweeter by the fact that she would not be paying a commission to the plaintiff." Those determinations find support in the record and, hence, are not clearly erroneous. They support the court's conclusion that there was substantial compliance with the requirements relevant to the transaction and that the facts and circumstances of the case made it inequitable to deny recovery. We therefore conclude that the court properly rendered judgment in favor of the plaintiff on her breach of contract claim.

The judgment is affirmed.