SUNSET GOLD REALTY, LLC *v.* PREMIER BUILDING AND DEVELOPMENT, INC., ET AL.
(AC 32745)

Beach, Bishop and Mihalakos, Js.

Argued October 14, 2011—officially released February 14, 2012

*Robert G. Golger*, for the appellants (defendants).

*Thomas T. Lonardo*, with whom were *Eugene A. Marconi* and, on the brief, *Colin P. Mahon*, for the appellee (plaintiff).

### Opinion

BISHOP, J. The defendants, Premier Building & Development, Inc. (Premier Building) and Cobblestone Associates, LLC (Cobblestone), appeal from the judgment of the trial court, rendered after a bench trial, in favor of the plaintiff, Sunset Gold Realty, LLC (Sunset Realty). On appeal, Premier Building and Cobblestone claim that the court (1) improperly found that Sunset Realty had procured a ready, willing and able tenant

under the terms of its listing agreement with Premier Building, and Cobblestone claims that the court (2) improperly rendered judgment against it even though it was not a party to the listing agreement between Sunset Realty and Premier Building.[1] We disagree and, accordingly, affirm the judgment of the trial court.

[1] In addition, Premier Building and Cobblestone argue that the court varied materially from the pleadings by finding that Cobblestone was a successor corporation to Premier Building. To set aside a judgment on the basis of a variance between the pleadings and the proof, the variance must be material. "A variance is material if the defendant was prejudiced in maintaining a defense, surprised by the plaintiff's proof or misled by the allegations in the complaint." *A. V. Giordano Co.* v. *American Diamond Exchange, Inc.*, 31 Conn. App. 163, 167, 623 A.2d 1048 (1993). The defendants rely on *Francis* v. *Hollauer*, 1 Conn. App. 693, 475 A.2d 326 (1984), for the proposition that "[a] judgment that is entered upon a claim not alleged is a material variance that requires reversal of a trial court's ruling." In *Francis*, this court concluded that the judgment, based on a cause of action entirely outside of the issues of the complaint, could not stand because "[t]he defendants were misled by the allegations in the complaint and prejudiced in the preparation and maintenance of their defense." *Francis* v. *Hollauer*, supra, 697. In the present action, Premier Building and Cobblestone raised the issue of successor liability in their posttrial brief. They now contend that the court's alleged finding on those grounds materially varies from the pleadings. "[B]ecause the [defendants] ha[ve] not shown that [they] w[ere] misled, surprised or prejudiced, the judgment will not be set aside on the basis of a claimed material variance between the [plaintiff's] pleadings and the court's conclusions." *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 296, 873 A.2d 208, cert. denied, 275 Conn. 905, 882 A.2d 668 (2005).

Lastly, Premier Building and Cobblestone claim that the court improperly rendered judgment against Cobblestone on a theory of successor liability. To the extent that the court misused the term "successor," we conclude that it was induced error caused by Premier Building's and Cobblestone's usage of the term in their posttrial brief. "[T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional and induced constitutional error. . . . The invited error doctrine rests [on principles] of fairness, both to the trial court and to the opposing party." (Internal quotation marks omitted.) *Gorelick* v. *Montanaro*, 119 Conn. App. 785, 796–97, 990 A.2d 371 (2010). Although the defendants employed the term "successor" in a subsection of their brief, it appears, based on their subsequent analysis of *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 949 A.2d 1189 (2008), that they were utilizing "successor" and "assign" as synonymous terms. Moreover, even though the court used the term

The relevant factual and procedural history is set forth in *Sunset Gold Realty, LLC* v. *Premier Building & Development, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-09-5027657-S (June 25, 2010) (50 Conn. L. Rptr. 183), as follows: "After discussions between Stephen Zacchio, a real estate broker for Sunset Realty, and Patrick Snow, the sole shareholder of Premier Building, on August 5, 2005, Premier [Building] executed an exclusive right to sell/lease/exchange with Sunset . . . Realty regarding the property at 72 Berlin Road. At that time Premier [Building] did not own the property but had an option to purchase it. The listing was for the period of time August 5, 2005 through August 5, 2006. Subsequently, Zacchio approached several prospective tenants including CVS. He contacted CVS' preferred developer, Gersh[man] Brown, through David Morello, [Gershman Brown's vice president], and showed the property to them. G.B. New England 2, LLC,[2] through David Morello and by a letter of intent dated October 31, 2005, notified Snow that they intended to enter into negotiations toward a ground lease for 72 Berlin Road and indicated that a CVS store would be constructed and operated on the property. The letter listed the landlord as Premier Building . . . or Cobblestone . . . . [Snow] signed it as agreed to by the landlord on behalf [of] Cobblestone . . . as its

"successor" in its description of Cobblestone, it analyzed Cobblestone's relationship to Premier Building on the basis of the law regarding assignments. Therefore, mindful of the induced error doctrine, and the absence of surprise or harm to the defendants, we decline to credit the defendants' claim that the court decided the matter on the grounds alleged, and instead, analyze the court's decision in light of the applicable standards governing the law of assignment.

[2] On the basis of our review of the record, it appears that G.B. New England 2, LLC, is a business entity. We are unable to determine, however, whether there is a relationship between G.B. New England 2, LLC, Connecticut CVS Pharmacy, LLC, and Gershman Brown. Because making this determination would not affect our ultimate decision, we decline to speculate regarding G.B. New England 2, LLC's affiliation with the aforementioned entities.

managing member. On May 4, 2006, Premier [Building] acquired title to the property and, on that same day, Premier [Building], acting through its president, Snow, conveyed the property to Cobblestone . . . . Eventually CVS approved the site and a ground lease for a portion of 72 Berlin Road was executed effective October 2, 2006, between Cobblestone . . . and Connecticut CVS Pharmacy, LLC. The plaintiff [Sunset Realty] subsequently requested that [it] be paid [its] commission of $137,500, which the defendants [Premier Building and Cobblestone] refused."

With that factual underlay, we now turn to the appeal at hand. On February 26, 2009, Sunset Realty filed a complaint alleging Premier Building's breach of the listing agreement (count one), Cobblestone's breach of the listing agreement (count two), Premier Building's unjust enrichment (count three) and Premier Building's violation of its duty of good faith and fair dealing under the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. (count four). On April 7, 2009, Premier Building filed an answer and a special defense asserting that Sunset Realty failed to earn its commission, and a counterclaim for vexatious litigation. That same day, Cobblestone also filed an answer and asserted a special defense that Sunset Realty failed to comply with the listing agreement.

After the presentation of evidence and the submission of posttrial briefs, the court issued a memorandum of decision in which it ruled that Cobblestone and Premier Building were obligated to pay the commission to Sunset Realty. The court specifically found that Sunset Realty was entitled to receive a commission pursuant to paragraph 6 (a) of the listing agreement.[3] In reaching

---

[3] Paragraph 6 (a) of the listing agreement states in relevant part: "We earn our commission if and when (a) during the term of this Agreement a prospective purchaser or tenant is ready, willing and able to purchase, lease, or exchange the property for the price(s) shown in Paragraph 4, or at any other price or terms acceptable to you . . . ."

this conclusion, the court determined that Cobblestone, as an assign of Premier Building, was also bound by the listing agreement even though the agreement was signed only by Premier Building and Sunset Realty. This appeal followed. Additional facts will be set forth as necessary.

I

On appeal, Cobblestone and Premier Building contend that the court improperly found that Sunset Realty had procured a ready, willing and able tenant under the terms of its listing agreement with Premier Building. We disagree.

We first set forth our standard of review. The issue of whether Sunset Realty had procured a ready, willing and able tenant under the terms of its listing agreement with Premier Building is a question of fact. *Revere Real Estate, Inc.* v. *Cerato*, 186 Conn. 74, 78–79, 438 A.2d 1202 (1982). "[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Forastiere* v. *Higbie*, 95 Conn. App. 652, 655–56, 897 A.2d 722, cert. denied, 280 Conn. 902, 907 A.2d 89 (2006). "In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Wesley* v. *Schaller Subaru, Inc.*, 277 Conn. 526, 544, 893 A.2d 389 (2006).

Based on our careful review of the record, we conclude that the court's finding that Sunset Realty had procured a ready, willing and able tenant under the terms of its listing agreement with Premier Building is supported by facts and reasonable inferences drawn from them. The court found, based on *Revere Real Estate, Inc.* v. *Cerato*, supra, 186 Conn. 78, that the eventual execution of the lease by CVS was evidence of the procurement by Sunset Realty, during the term set forth in the listing agreement, of a ready, willing and able tenant to lease the premises. In reaching this conclusion, the court referenced the fact that, more than nine months prior to the expiration of the listing agreement, a letter of intent had been signed by Premier Building or Cobblestone as the landlord, with G.B. New England 2, LLC, as the tenant, indicating that G.B. New England 2, LLC, would be developing the property for occupation by CVS. The letter also stated that "[i]t [was] intended to impose upon the parties hereto an obligation to negotiate, in good faith, a Ground Lease." On the basis of those findings, the court determined that Sunset Realty had procured a ready, willing and able tenant pursuant to paragraph 6 (a) of the listing agreement. We cannot say, in light of all of the evidence in the record as a whole, that the court's factual conclusion in this regard was clearly erroneous.

## II

Cobblestone also argues that the court improperly rendered judgment against it because it was not a party to the listing agreement between Sunset Realty and Premier Building. Premier Building and Cobblestone contend that, pursuant to our Supreme Court's holding in *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 949 A.2d 1189 (2008), Premier Building's obligation to compensate Sunset Realty under the listing agreement was not validly assigned to Cobblestone. Therefore,

Cobblestone reasons that it should not be held liable pursuant to the listing agreement. We disagree.

We first set forth our standard of review. "An assignment is a contract between the assignor and the assignee, and is interpreted or construed according to rules of contract construction." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 227, 828 A.2d 64 (2003). "[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Id. The interpretation of the listing agreement's language in this action, therefore, presents a question of law over which we exercise plenary review. "To the extent [however] that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) *Giametti* v. *Inspections, Inc.*, 76 Conn. App. 352, 356, 824 A.2d 1 (2003). Because the court relied on facts outside of the listing agreement in ascertaining the intent of the parties, the validity of the assignment of the obligations undertaken in the contract is a mixed question of law and fact. See *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 227.

A brief discussion of the relevant law of assignment is useful to our analysis. The Restatement (Second) of Contracts provides in relevant part that "[a]n assignment of a right [or duty] is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's [duty to perform for or] right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right [or duty] to [engage in] such performance. . . ." 3 Restatement (Second), Contracts § 317 (1981).[4] "No words of art are required to

---

[4] Section 316 of the Restatement (Second) of Contracts sets forth the scope of the chapter on assignment and delegation, and comment (c) of that section indicates that assignment refers to either rights or duties or both. 3 Restatement (Second), supra, § 316 and comment (c).

constitute an assignment; any words that fairly indicate an intention to make the assignee owner of a claim are sufficient . . . ." 29 S. Williston, Contracts (4th Ed. 2003) § 74:3, p. 219. "The assignment . . . remains valid and enforceable against both the assignor and the assignee." (Internal quotation marks omitted.) *Rumbin v. Utica Mutual Ins. Co.*, 254 Conn. 259, 269, 757 A.2d 526 (2000). As a matter of law, therefore, "an assignor's obligations are not extinguished by an assignment." *Shoreline Communications, Inc. v. Norwich Taxi, LLC*, 70 Conn. App. 60, 74, 797 A.2d 1165 (2002).

Sunset Realty's ability to recover under the listing agreement is also governed by General Statutes § 20-325a, titled "Actions to recover commissions arising out of real estate transactions. Real estate broker's lien for real property. Claim for lien. Provisions re commercial real estate transactions." That statute provides in relevant part: "(b) No person, licensed under the provisions of this chapter, shall commence or bring any action with respect to any acts done or services rendered after October 1, 1995, as set forth in subsection (a), unless the acts or services were rendered pursuant to a contract or authorization from the person for whom the acts were done or services rendered. To satisfy the requirements of this subsection any contract or authorization shall: (1) Be in writing, (2) contain the names and addresses of the real estate broker performing the services and the name of the person or persons for whom the acts were done or services rendered, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization, (5) be signed by the real estate broker or the real estate broker's authorized agent, (6) if such contract or authorization pertains to any real property, include the following statement: 'THE REAL ESTATE BROKER MAY BE ENTITLED TO CERTAIN LIEN RIGHTS PURSUANT

TO SECTION 20-325a OF THE CONNECTICUT GEN-
ERAL STATUTES', and (7) be signed by the person
or persons for whom the acts were done or services
rendered or by an agent authorized to act on behalf of
such person or persons . . . ." General Statutes § 20-
325a (b).

Subsection (d) of the statute permits recovery under
a written agreement that substantially complies with the
aforementioned requirements.[5] General Statutes § 20-
325a (d). Our Supreme Court has determined that
"when . . . there is no strict compliance with the
requirements of subsections (a), (b) and (c), an action
for a real estate commission under § 20-325a nonethe-
less may proceed if two preconditions are met: (1) there
has been substantial compliance with the requirements
relevant to the transaction; and (2) the facts and circum-
stances of a case would make it inequitable to deny
recovery." *Location Realty, Inc.* v. *Colaccino,* supra,
287 Conn. 719.

Cobblestone argues that because it was not a signa-
tory to the listing agreement, and, therefore, the require-
ments of § 20-325a were not met, Sunset Realty has no
legal right to enforce the listing agreement against it.
We are not persuaded. Our Supreme Court has con-
cluded that the subsequent assignment of rights or
duties under a listing agreement is permissible when
additional requirements are also satisfied. In *Location
Realty, Inc.* v. *Colaccino,* supra, 287 Conn. 722 n.14,
the plaintiff claimed that the listing agreement applied
to the defendants because it contained a term stating
that it was binding on " 'assigns'." Our Supreme Court
rejected this argument because there was no written

---

[5] In 1994, the legislature added what is now subsection (d), the exception
permitting recovery for those individuals who substantially complied with
the requirements of the statute provided that the equities balanced in their
favor. See Public Acts 1994, No. 94-240, § 3; *Location Realty, Inc.* v. *Colac-
cino,* supra, 287 Conn. 729.

modification of the agreement or *other agreement specifically designating the defendants as assigns*. Id. The court further noted that such a written instrument had to *substantially comply* with the requirements of § 20-325a and had to describe both the assignee and the "subject matter of the assignment . . . with such particularity as to render it capable of identification." (Internal quotation marks omitted.) Id.

In the present case, the record reflects that Premier Building and Sunset Realty executed a listing agreement with regard to the Berlin Road property that stated in relevant part: "This agreement shall be binding upon the parties and their heirs, successors, *assigns*, and personal representatives . . . and may be modified, waived or discharged only by an agreement in writing signed by all parties." (Emphasis added.) Notably, by the terms of this agreement, Premier Building's obligations were intended to be binding on its assignees.[6] Subsequent to this agreement, Premier Building transferred its interest in the Berlin Road property to Cobblestone for one dollar and other good and valuable consideration. Additionally, at all relevant times, Premier Building and Cobblestone shared a common member, Patrick Snow. Approximately four months after the property transfer, one of Cobblestone's members, Mel J. Eisen, sent an e-mail to Zacchio, the broker for Sunset Realty, acknowledging Cobblestone's obligation to compensate Sunset Realty for its services. Eisen stated in relevant part: "If a sale [of the subject property] took place you would have been paid . . . period. If and when a deal occurs with CVS, you will get paid what you are entitled to . . . period."

Based on a thorough review of the record, we conclude that the court reasonably could have found that

---

[6] Although the court and the listing agreement utilize the term "assigns," we use the more common term "assignees." See Black's Law Dictionary (9th Ed. 2009).

Eisen's e-mail correspondence with Zacchio substantially complied with the requirements of § 20-325a.[7] The e-mail identified Cobblestone's obligation to compensate Sunset Realty for its services, contained the names of both the real estate broker and the person for whom services were rendered and was signed by the person for whom the services were rendered.

The record also reflects that the facts and circumstances would make it inequitable to deny recovery to Sunset Realty. The court found that Snow "established Cobblestone in order to secure financing for the project since Premier [Building] did not have the funds to finance the project." Unlike the lack of a relationship between the parties in *Location Realty, Inc.*, in the present case Cobblestone existed solely as a function of Premier Building, demonstrating a co-dependent relationship between the two entities. Noting the absence of such a relationship between the signatory to the agreement and a purported assignee in *Location Realty, Inc.*, the court in the present case commented that *Location Realty, Inc.*, was "distinguishable from the situation here because there was no indication in that case that the entity that bought the property was related in any way to the party with whom the plaintiff had entered into the initial listing agreement." We agree with the court that the presence of such a relationship between Premier Building and Cobblestone, combined

[7] The existence of substantial compliance is supported by the record. Implicit in the court's judgment that Cobblestone was liable under the listing agreement is a finding that the e-mail from Eisen to Zacchio constituted substantial compliance with § 20-325a. Because neither of the parties requested an articulation to fortify the record, to the extent that it is unclear what the court relied on in establishing that there was substantial compliance with § 20-325a, we read an ambiguous trial record to support, rather than undermine, the judgment. *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 482, 586 A.2d 1157 (1991) ("[w]here an appellant has failed to avail himself of the full panoply of articulation and review procedures, and absent some indication to the contrary, we ordinarily read a record to support, rather than to contradict, a trial court's judgment").

with the e-mail from Cobblestone expressly acknowledging the obligation, distinguish this case from *Location Realty, Inc.*[8]

In short, on the basis of our Supreme Court's reasoning in *Location Realty, Inc.*, we conclude that the e-mail from a Cobblestone member was sufficient to serve as a designation of Cobblestone as an assignee of Premier Building. The e-mail constituted a separate agreement designating Cobblestone as an assignee and included a description of both the assignee and the subject matter of the assignment with sufficient particularity as to render it capable of identification. See *Location Realty, Inc.* v. *Colaccino*, supra, 287 Conn. 722 n.14.

In sum, Premier Building, as a party to the listing agreement with Sunset Realty, expressly bound its assignees to the terms of said agreement with regard to the Berlin Road property. Cobblestone, the subsequent owner of the property, explicitly acknowledged its duty to compensate Sunset Realty for its services. On the basis of our review of the record, therefore, we conclude that Cobblestone's e-mail to Sunset Realty demonstrated that Cobblestone considered itself obligated under the terms of the listing agreement as Premier Building's assignee, which leads us to the determination that a valid assignment from Premier Building to Cobblestone had occurred.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] The court distinguished *Location Realty, Inc.*, from the present case primarily on the basis that Cobblestone and Premier Building shared a common member. It presumed a flow of information between the entities, and, therefore, imputed Premier Building's knowledge of its business transactions onto Cobblestone. We note, however, that our discussion of *Location Realty, Inc.*, as previously set forth, includes additional distinguishing factors.