******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

AMERICAN FIRST FEDERAL, INC. *v.*
SHELDON M. GORDON ET AL.
(AC 38217)
(AC 38365)

Lavine, Keller and Pellegrino, Js.

*Argued January 5—officially released June 6, 2017*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Complex Litigation Docket,
Genuario, J.)

*Patrick A. Linsey*, with whom was *Aaron A. Romney*,
for the appellants in AC 38217, appellees in AC 38365
(defendants).

*Jonathan P. Vuotto*, pro hac vice, with whom were

*William N. Wright*, and, on the brief, *John F. Carberry, David T. Martin, Jeffrey B. Gardner*, and *Laura J. Petrie*, for the appellee in AC 38217, appellant in AC 38365 (plaintiff).

*Opinion*

KELLER, J. These consolidated appeals arise from an action brought by the plaintiff, American First Federal, Inc., against the defendants, Sheldon M. Gordon and Gordon Group Investments, LLC (GGI), to collect on a commercial loan. Following a trial to the court, judgment was rendered in favor of the plaintiff. In AC 38217, the defendants claim that the court erred by concluding that the plaintiff's predecessor in interest assigned its rights under the loan to the plaintiff. In AC 38365, the plaintiff claims that the court erred in its determination of attorney's fees and calculation of postjudgment interest. We disagree with the parties' claims. Accordingly, we affirm the judgment of the court.

The following facts, as found by the court, undisputed evidence, and procedural history are relevant to the parties' claims. On or about September 18, 2006, Gordon and Sovereign Bank (Sovereign), which is not a party to these appeals, executed a business loan agreement. As part of the agreement, Gordon executed a promissory note (2006 note) in favor of Sovereign in the principal amount of $3,000,000 with a maturity date of December 1, 2006. GGI, through Gordon as its manager, guaranteed repayment of the loan. On or about November 21, 2008, Gordon executed a second promissory note (2008 note), amending and restating the terms of the 2006 note. The 2008 note evidenced the same debt as the 2006 note and had a maturity date of June 30, 2009.

Sovereign, Gordon, and GGI subsequently executed two agreements relating to the loan. The first (2009 modification agreement) extended the maturity date of the 2008 note to December 31, 2009. Under the second agreement (2010 forbearance agreement), Sovereign promised to forbear from bringing an action to collect on the loan until September 30, 2010.

On or about September 22, 2010, Sovereign and the plaintiff executed an asset sale agreement in which Sovereign agreed to sell, and the plaintiff agreed to purchase, Sovereign's interest in the loan[1] on a subsequent closing date. Prior to the execution of the agreement, however, Sovereign lost the original 2006 and 2008 notes. Those originals were never recovered. Nevertheless, copies of all operative loan documents, with the exception of the 2008 note, were transferred to the plaintiff on or about the closing date.[2]

Sovereign and an agent for the plaintiff each informed Gordon via letter that Sovereign had transferred the loan to the plaintiff. Gordon made several loan payments to the plaintiff; however, he failed to make any after February 9, 2011.[3]

The plaintiff commenced this action on May 27, 2011. In its operative complaint, dated December 12, 2014, the plaintiff alleged, inter alia, that Gordon was in breach of the business loan agreement and the 2008 note, or, in

the alternative, the business loan agreement and the 2006 note, for unpaid principal, interest, and fees totaling $4,238,179.72. The plaintiff also sought attorney's fees and prejudgment and postjudgment interest under General Statutes § 37-3a.[4] Trial commenced on January 13, 2015, and concluded the following day.

By way of a memorandum of decision dated May 26, 2015, the court rendered judgment for the plaintiff. The court concluded that Sovereign had assigned the loan to the plaintiff and, accordingly, that the plaintiff was entitled to collect on the debt.[5] The court awarded damages of $4,325,778.80, consisting of unpaid principal, interest, late charges, and other costs. The court reserved judgment as to attorney's fees and postjudgment interest to allow for a hearing on those matters. After that hearing, and by way of a memorandum of decision dated August 25, 2015, the court awarded the plaintiff attorney's fees and costs of $483,451.86. The court further concluded that the plaintiff was entitled to postjudgment interest on the outstanding principal balance of the loan, which would continue to accrue until the loan was paid off. These appeals followed. Additional facts will be provided as necessary.

I

AC 38217

The defendants claim that the court erred by concluding that Sovereign assigned the loan to the plaintiff. We disagree.

The following facts, as found by the court, and undisputed evidence are pertinent to this claim. As previously noted, Sovereign and the plaintiff executed an asset sale agreement in which Sovereign agreed to sell, and the plaintiff agreed to purchase, the Gordon debt on a subsequent closing date. The asset sale agreement provided that, on the closing date, the plaintiff would pay Sovereign the purchase price, and Sovereign would provide the plaintiff with any notes or lost note affidavits related to the Gordon loan, as well as a "Bill of Sale and Assignment" (bill of sale) "selling, assigning, transferring and conveying to the [plaintiff] all rights, title and interests of [Sovereign]" in the loan.[6] No bill of sale was produced at trial.

In their posttrial brief, the defendants argued that the plaintiff was not an assignee of the loan, or was otherwise estopped from asserting that it was an assignee. Their argument was threefold. First, the defendants argued that the asset sale agreement did not, by itself, effectuate an assignment of the Gordon loan because the agreement merely bound Sovereign to assign the loan to the plaintiff *in the future*, i.e., on the closing date. See 3 Restatement (Second), Contracts § 330 (1), p. 49 (1981) ("[a] contract to make a future assignment of a right . . . is not an assignment"). Thus, the defendants argued, the plaintiff was not an assignee

of the loan, and accordingly was not entitled to collect under it.

Second, and in the alternative to the first argument, the defendants argued that, to the extent that the plaintiff asserted that evidence *other* than the asset sale agreement demonstrated that an assignment occurred, the plaintiff was estopped from advancing such argument because the plaintiff's operative complaint specifically alleged that "[b]*y an Asset Sale Agreement . . .* Sovereign sold, assigned, transferred and conveyed all of its rights, title and interests" in the debt to the plaintiff. (Emphasis added.) See *A. V. Giordano Co.* v. *American Diamond Exchange, Inc.*, 31 Conn. App. 163, 166, 623 A.2d 1048 (1993) ("[o]ur law provides that a plaintiff's recovery is limited to the allegations made in its complaint").

Third, and in the alternative to the second argument, the defendants argued that, even if evidence *other* than the asset sale agreement could be considered in determining whether an assignment occurred, such evidence was insufficient to show an assignment in the absence of the bill of sale.

The court concluded that Sovereign did in fact effectuate an assignment of the loan to the plaintiff. The court first observed that, "[g]enerally, to constitute an assignment there must be a purpose to assign or transfer the whole or a part of some particular thing, debt, or chose in action, and the subject matter of the assignment must be described with such particularity as to render it capable of identification." (Internal quotation marks omitted.) The court concluded that the asset sale agreement "contains a clear purpose to assign or transfer the whole of the Gordon debt and documentation." The court also determined that the asset sale agreement, as well as other documents relating to the loan, identified the Gordon debt "with sufficient particularity." The court concluded that, despite the fact that the plaintiff did not produce the bill of sale at trial, there was ample other evidence demonstrating that the debt and related documents were "actually conveyed" to the plaintiff. Such actual conveyance was evidenced, the court found, by the following: "First, the Asset Sale Agreement clearly establishes the intent to convey the documents and the debt in the broadest possible sense and identifies the documents and debt with sufficient particularity to render it capable of identification. Second, copies of all of the operative documents except the 2008 note were transferred to the plaintiff at or about the time of closing. Third, the Asset Sale Agreement calls for lost note affidavits in the event of lost notes and a lost note affidavit was executed by representatives of Sovereign and delivered to the plaintiff with regard to the 2006 note at or about the time of closing. Fourth, an allonge relating to the 2006 note was executed at or about the time of closing. Fifth,

while the 2008 note was not discovered by the plaintiff or Sovereign until well after the closing, upon its discovery an allonge was executed by Sovereign and a lost note affidavit covering the 2008 note was executed by Sovereign, both of which were delivered to the plaintiff. Sixth, shortly after the closing Sovereign sent a letter to . . . Gordon stating that the loan had been transferred to the plaintiff. Similarly, representatives of the plaintiff sent a letter to the defendants utilizing the same account number as indicated in the Sovereign letter notifying the defendants that the loan had been transferred to the plaintiff. Seventh, Gordon made payments to the plaintiff and forwarded financial statements to the plaintiff subsequent to these letters, indicating his concurrence that the debt had been transferred to the plaintiff. Eighth and finally, the testimony of the various representatives of Sovereign and the plaintiff are all consistent with their intent and understanding that the documents and debt had been conveyed to Sovereign."

On appeal, the defendants make essentially the same three arguments previously described. We do not find these arguments to be persuasive.

Before proceeding to our analysis, we note the following legal principles relating to assignments. "An assignment is a transfer of property or some other right from one person (the assignor) to another (the assignee), which confers a complete and present right in the subject matter to the assignee. An assignment is a contract between the assignor and the assignee, and is interpreted or construed according to the rules of contract construction." (Footnotes omitted; internal quotation marks omitted.) 6 Am. Jur. 2d 145–46, Assignments § 1 (2008). "Generally, to constitute an assignment there must be a purpose to assign or transfer the whole or a part of some particular thing, debt, or chose in action, and the subject matter of the assignment must be described with such particularity as to render it capable of identification." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 227, 828 A.2d 64 (2003).

"[W]hen the facts are undisputed and the manifestation of intent must be gleaned by examining the words and actions of the alleged assignor, the issue of whether there is a valid assignment is a question of law over which we exercise plenary review." *One Country, LLC* v. *Johnson*, 314 Conn. 288, 300, 101 A.3d 933 (2014). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Fernwood Realty, LLC* v. *AeroCision, LLC*, 166 Conn. App. 345, 356, 141 A.3d 965, cert. denied, 323 Conn. 912, 141 A.3d 981 (2016).

The court did not err in concluding that Sovereign

assigned the debt to the plaintiff. Although we agree with the defendants that the asset sale agreement, by itself, was insufficient to effectuate an assignment,[7] other facts found by the court, together with the asset sale agreement, amply demonstrate that Sovereign assigned the loan to the plaintiff.

The first requirement for an assignment is an intent to assign—that is, to "[confer] a complete and present right in the subject matter to the assignee." 6 Am. Jur. 2d, supra, § 1, pp. 145–46. "The intent to assign may appear from the writing itself, or may be derived from another source, such as the acts of the assignor or the surrounding circumstances. In determining the intent of the parties to an assignment, all the facts and circumstances surrounding the transaction must be taken into consideration." (Footnote omitted.) Id., § 100, pp. 220–21.

Although the asset sale agreement did not itself effectuate the assignment, the agreement may be considered as evidence of Sovereign's intent to assign. To be sure, it is not conclusive evidence. But when added to the fact that, after execution of the agreement, operative loan documents were sent to the plaintiff on or about the closing date, both Sovereign and the plaintiff informed Gordon by letter that Sovereign had transferred the loan to the plaintiff, and Gordon then proceeded to make payments to the plaintiff, we are persuaded that Sovereign manifested an intent to assign the debt to the plaintiff.

The defendants do not challenge the court's finding with respect to the second requirement of an assignment—that is, that the subject matter of the assignment be adequately identified.[8] *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 227. We therefore do not disturb the court's determination that the loan was identified with sufficient particularity. Accordingly, we conclude as a matter of law that Sovereign assigned the Gordon loan to the plaintiff.

We next consider the defendants' argument that the plaintiff's complaint was insufficient to plead the theory that assignment of the loan was effectuated in any way other than by the asset sale agreement. "[T]he interpretation of pleadings is always a question [of law] for the court . . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the com-

plaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 82–83, 700 A.2d 655 (1997).

The plaintiff's complaint alleged that "[b]*y an Asset Sale Agreement* . . . by and between Sovereign, as seller, and Plaintiff, as buyer, Sovereign sold, assigned, transferred and conveyed all of its rights, title and interests in the [Gordon debt]." (Emphasis added.) Even though we believe, as stated previously, that the asset sale agreement did not by itself effectuate an assignment, we are not persuaded by the defendants' argument. We deem it sufficient that the plaintiff identified the asset sale agreement in the manner that it did in the complaint because the agreement contained detailed terms governing the closing and therefore put the defendants on notice that the assignment was to be effectuated through such closing. Accordingly, we reject this argument.[9]

Finally, the defendants argue that the court erred by concluding that Sovereign assigned the loan to the plaintiff because the plaintiff did not produce a bill of sale at trial. The defendants argue that this is the case because the asset sale agreement "mandated that any assignment in relation thereto was to be effectuated in writing via a [bill of sale] . . . ." This argument presents a question of law over which we exercise plenary review. See *One Country, LLC* v. *Johnson*, supra, 314 Conn. 300.

The defendants' argument is unsound. We observe that the asset sale agreement was an agreement between Sovereign and the *plaintiff*—that is, between the assignor and assignee—and not between Sovereign and the defendants. For this reason, the plaintiff's reliance on *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 949 A.2d 1189 (2008), is misplaced. In *Colaccino*, the contract at issue, which contained a provision requiring that any assignment be memorialized in a writing signed by both parties, was between the would-be assignor and the *obligor*. Id., 722 n.14. Such restrictions are generally permissible. See 6 Am. Jur. 2d, supra, § 19, p. 159 ("[i]t has been held that provisions in bilateral contracts that forbid or restrict assignment of the contract without the consent of the obligor are generally valid and enforceable").

The defendants have not, however, provided any legal authority for the proposition that the absence of a bill of sale or any other document, the issuance of which was mandated by a contract between the *assignor* and *assignee*, precludes a determination that an assignment occurred.

Although the bill of sale was a document key to the closing as contemplated by the asset sale agreement, and the absence of such document undoubtedly tends

to support the defendants' argument that no assignment occurred, we see no reason why we should be required to ignore the other facts found by the court clearly indicating that Sovereign intended to, and in fact did, assign the loan to the plaintiff. As stated previously, those facts amply demonstrate that an assignment occurred. This argument is, therefore, unavailing.

## II

### AC 38365

#### A

We now turn to the plaintiff's first claim on appeal. The plaintiff claims that the court abused its discretion by awarding a lesser amount of attorney's fees than the plaintiff sought on the basis that the amount sought was unreasonable. We disagree.

"[T]here is an undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing." (Emphasis omitted; internal quotation marks omitted.) *Smith* v. *Snyder*, 267 Conn. 456, 471, 839 A.2d 589 (2004). "[T]he proponent must present to the court . . . a statement of the fees requested and a description of services rendered." Id., 479.

"[W]e review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 252–53.

The following additional facts, as found by the court, are relevant to our discussion. "The plaintiff [sought] an award of attorney's fees in the amount of $699,644.25, plus costs in the amount of $18,451.86, for a total award of $718,056.11. In support of [its] motion, the plaintiff . . . offered the affidavits of lead counsel who was admitted pro hac vice and the affidavit of lead counsel for the local firm that also represented the plaintiff. The affidavits submitted were heavily redacted[10] as a result of the plaintiff's claim that the redactions were necessary to protect the plaintiff's attorney-client privilege. Subsequent to the [defendants'] objection, which in part was based upon the significant redactions, the plaintiffs filed supplemental affidavits of the two attorneys, which contained significant redactions, but less than those which were contained in the original affidavits."[11] (Footnote added.)

The court awarded the plaintiff attorney's fees of $465,000—approximately $235,000 less than the amount

sought—and costs of $18,451.86. In its August 25, 2015 memorandum of decision, the court reasoned: "[T]he court cannot ignore the fact that the plaintiff chose to employ two well respected and competent law firms; and that the out of state firm utilized three lawyers and the instate firm utilized three lawyers and three paralegals. The court also agrees that the redactions to the billing records, including the redactions to the amount actually paid, affect, though do not eliminate, the probative value of those records. The court believes that in many cases there was a duplication of effort by the firms and notes that both firms sent experienced partners during the trial of this case as well as during most pretrial and post-trial motions (as opposed to a partner and [an] associate which would be more typical of a case of this type) and that the efficiency of the delivery of legal services was impacted by that decision."

The plaintiff argues that the court abused its discretion by awarding the amount of attorney's fees that it did because (1) the redactions to the affidavits were appropriate and, even with them, the affidavits provided sufficient basis for the court to award the fees requested, and (2) the court's finding that there was some duplication of work among the plaintiff's attorneys was unsupported by the record. These arguments are unavailing.

The court, *Genuario, J.*, handled all aspects of this litigation since late 2013. This included adjudicating numerous discovery disputes, several motions to strike, motions for summary judgment by both parties, and all manner of other motions and requests. Clearly, the court was quite familiar with the issues tried and the work performed by counsel. The court concluded, no doubt based on such familiarity with the case, as well as its "general knowledge of what would be reasonable compensation"; (internal quotation marks omitted) *Smith* v. *Snyder*, supra, 267 Conn. 471; that the figure the plaintiff submitted was unreasonable. We afford substantial deference to the court in this regard, and see no reason to conclude that the court erred simply because it did not cite specific instances of duplication in its memorandum of decision. See *Commission on Human Rights & Opportunities* v. *Brookstone Court, LLC*, 107 Conn. App. 340, 352, 945 A.2d 548, cert. denied, 288 Conn. 907, 953 A.2d 651 (2008) (rejecting plaintiff's argument that court's attorney's fees award using lodestar method improper "[i]n the absence of the trial court identifying any specific time spent in the litigation by [the] plaintiff['s] counsel as being unreasonable . . . ." [internal quotation marks omitted]).[12]

We likewise do not find error in the court's observation that the redactions "affect, though do not eliminate, the probative value of" the affidavits. The following background is relevant to this argument. At the posttrial

hearing concerning attorney's fees and postjudgment interest, the court stated: "[Y]ou are looking at three quarters of a million dollars in attorney's fees for what was effectively a two day, three day trial with a lot of stipulation of facts. . . . Here you have two very competent law firms. The plaintiff decided that it wanted to be represented by two firms, which is the plaintiff's right. . . . [B]ut [that] doesn't mean [that] the plaintiff . . . gets to double up on the charges against the defendants if that was not reasonable. . . . [A]nd one of the things that I frequently do in situations like that is to look at the details of the bills, see whether there is duplication of effort, see whether I think the amount of time spent was justified. You still have even on the amended affidavits . . . substantial redactions, which makes it difficult to determine where the duplication of effort occurred or didn't occur."

In light of this statement, it appears that the court, in its August 25, 2015 memorandum of decision, concluded that the fee figure sought by the plaintiff likely represented a partial duplication of effort, and was therefore unreasonable, for reasons *independent* of the redactions to the affidavits. As stated previously, the court was permitted to apply its knowledge of this particular litigation, as well as its general knowledge of what would be reasonable fees in similar cases, in determining appropriate attorney's fees. Accordingly, we reject this claim.

B

Finally, the plaintiff claims that the court erred in its calculation of postjudgment interest. We disagree.

The following evidence is relevant to this claim. As mentioned previously, after trial, the court heard argument regarding the calculation of postjudgment interest. At the hearing, the parties agreed on a postjudgment interest rate of 9.16 percent. They disagreed, however, as to the amount to which that rate should be applied. The defendants asserted that postjudgment interest should be applied only to the outstanding principal balance of the loan—that is, $2,944,333.59. The plaintiff argued that such interest should be applied to the total judgment amount of $4,468,839.71, a figure representing unpaid principal *and* interest and other costs.

The court concluded that postjudgment interest should be applied only to the outstanding principal. Relying on *Sikorsky Financial Credit Union, Inc.* v. *Butts*, 315 Conn. 433, 108 A.3d 228 (2015), the court distinguished between General Statutes § 37-1, which relates to interest for money loaned (interest eo nomine), and General Statutes § 37-3a, which deals with interest recoverable as damages for the detention of money postmaturity. The court concluded that § 37-1 governed the present case. The court reasoned: "[Section] 37-1 applies both prejudgment and postjudgment

interest without change. It requires the parties to be held to the express terms of their bargain as set forth in the applicable documents representing their agreement and . . . we must turn to the express terms of the parties' agreement." Reviewing the relevant loan documents, the court concluded that the documents provided for postjudgment interest to be applied only to the unpaid principal balance of the loan.

The plaintiff argues that the court erred by determining that the postjudgment interest rate should apply only to the unpaid principal of the loan, and not to the total amount of the judgment. Because this claim involves the interpretation of definitive contract language, our review is plenary. See *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 101, 84 A.3d 828 (2014).

The plaintiff's argument is flawed. Section 37-3a is inapplicable because "[o]nly if the parties to a loan *expressly reject* postmaturity interest will the trial court then have discretion under § 37-3a to award interest as damages for the detention of money." (Emphasis added.) *Sikorsky Financial Credit Union, Inc.* v. *Butts*, supra, 315 Conn. 444. We have reviewed the relevant loan documents. Nowhere in them does the plaintiff expressly disclaim its right to postmaturity interest. The court therefore did not have discretion to award interest as damages under § 37-3a.

As for interest under § 37-1, we must look to the relevant terms of the agreement between Sovereign and the defendants. We agree with the court that the loan documents expressly provide that interest is to be applied only to the outstanding principal of the loan. The 2008 note states: "[Gordon] promises to pay to [Sovereign] . . . the principal amount of [$3,000,000] or so much as may be outstanding, together *with interest on the unpaid outstanding principal balance* of each advance." (Emphasis added.) The 2009 modification agreement provides: "Interest on this Note is computed . . . by applying the ratio of the interest rate over a year of 360 days, *multiplied by the outstanding principal balance*, multiplied by the actual number of days the principal balance is outstanding." (Emphasis added.)

The final agreement between the parties—the 2010 forbearance agreement—states that "the outstanding principal amount of the loan shall continue to bear interest at the Default Interest Rate during the term of this Agreement." The "term of this Agreement" means until September 30, 2010, because the plaintiff agreed to forbear from bringing suit to collect on the loan before that date. The 2010 forbearance agreement also states that "[a]ll of [the defendants'] obligations, indebtedness and liabilities to [Sovereign] as evidenced by or otherwise arising under the Loan Documents[13] and this agreement . . . except as otherwise expressly modified in this Agreement . . . are, by [the defendants']

execution of this Agreement, ratified and confirmed in all respects by [the defendants].'' (Footnote added.) Thus, the defendants' obligation to pay interest on the loan principal, as set forth expressly in the 2008 note and 2009 modification agreement, continued after the term of the 2010 forbearance agreement.[14]

The plaintiff is entitled to postmaturity interest under § 37-1 because Sovereign and the defendants did not disclaim it. See *Sikorsky Financial Credit Union, Inc.* v. *Butts*, supra, 315 Conn. 444. Such interest, however, will be calculated using the method by which Sovereign and the defendants agreed to calculate interest eo nomine—that is, by applying the interest rate to the outstanding *principal* balance of the loan. Accordingly, there is no error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Hereinafter, we refer to "Sovereign's interest in the loan" as simply the loan or the debt.

[2] Sovereign located a copy of the 2008 note in 2013. Upon discovery, Sovereign executed an allonge stating: "[I]t is intended that this Allonge be attached to and made a permanent part of the [2008] note. Pay to the order of American First Federal, Inc. . . .'' Sovereign delivered this allonge, as well as a lost note affidavit for the 2008 note, to the plaintiff. "An allonge is defined as [a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." (Internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Fequiere*, 119 Conn. App. 570, 577 n.7, 989 A.2d 606, cert. denied, 295 Conn. 922, 991 A.2d 564 (2010).

[3] The court found that, although Gordon had not made any payments on the loan since February 9, 2011, no one other than the plaintiff, the plaintiff's representative, or Sovereign had contacted the defendant claiming the right to collect under the loan. The court also observed that "Sovereign does not claim any rights under the various documents signed by Gordon or GGI."

[4] Section 37-3a (a) permits the recovery of interest "as damages for the detention of money after it becomes payable."

[5] In so concluding, the court also determined that the 2008 note superseded the 2006 note, and was, therefore, the operative note in this case.

[6] The asset sale agreement also provided that the bill of sale would serve as evidence that the transaction occurred.

[7] Because it set forth several conditions precedent to completing the assignment, including the aforementioned closing, the asset sale agreement merely bound Sovereign and the plaintiff to make an assignment *in the future*, and, therefore, was not itself an assignment. See 3 Restatement (Second), supra, § 330 (1).

We also note that the asset sale agreement contained a Massachusetts choice of law provision, and that Massachusetts law is in accord with our conclusion that the asset sale agreement was not itself an assignment. See *Salafia* v. *Hanover Ins. Co.*, Docket No. 07-P-1021, 2008 WL 2677149, *2 (Mass. App. July 10, 2008) ("[a]n assignment is made when the assignor intends to assign a present right, identifies the subject matter assigned and divests itself over the subject matter assigned" [internal quotation marks omitted]).

[8] Although the defendants point to a variance in Gordon's "obligor number" (i.e., an identification number for the Gordon loan) occurring in a few documents relating to the loan, the defendants do so distinctly in the context of arguing that the alleged deficiency in the plaintiff's complaint prejudiced the defendants. We address this prejudice argument in footnote 9 of this opinion.

[9] Because we conclude that the plaintiff's complaint was not deficient in the manner described by the defendants, we do not reach the defendants' argument that such alleged deficiency prejudiced them.

[10] The affidavits were in the form of time sheets generated by each firm representing the plaintiff. The time sheets contained entries for each task or group of tasks that the firms performed on behalf of the plaintiff in the

present matter. Each entry listed, inter alia, the subject or nature of each task or group of tasks, as well as the corresponding date, time expended, and cost. The redacted material appears to be limited to the subject or nature of the tasks. For example, a July 28, 2014 entry for one of the firms reads: "Teleconference with Atty Gardner re: [redacted]."

[11] At the hearing concerning attorney's fees and postjudgment interest, the plaintiff offered to provide the court with unredacted versions of the affidavits for in camera review. The hearing concluded, however, without the plaintiff's actually requesting that those versions of the affidavits be entered into evidence. Nor did the plaintiff request additional time to prepare such affidavits for submission to the court at a later point.

[12] With regard to the plaintiff's critique that the court failed to identify specific instances of duplication, we also observe that the plaintiff was free to request that the court articulate its reasons for concluding that there was duplication of work, but the plaintiff failed to do so. See Practice Book § 66-5.

[13] The 2010 forbearance agreement defined "Loan Documents" as the 2006 note, 2009 modification agreement, business loan agreement, and guaranty by GGI. The 2010 forbearance agreement did not reference the 2008 note (i.e., the operative note in this case) but it did, as just mentioned, reference the 2009 modification agreement, which itself referenced the 2008 note.

[14] For this reason, we reject the plaintiff's assertion that "[t]here was no language in the 2010 forbearance agreement . . . that provided that default interest should only apply to the principal balance upon entry of judgment."