******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX
LIBERTY TRANSPORTATION, INC.
*v.* MASSACHUSETTS BAY
INSURANCE COMPANY*

Superior Court, Judicial District of Hartford
File No. CV-13-6044771-S
Memorandum filed March 27, 2018

*Proceedings*

Memorandum of decision on defendant's motion to dismiss. *Motion granted.*

*Stuart G. Blackburn*, for the plaintiff.

*Stephen O. Clancy* and *Jessica A. R. Hamilton*, for the defendant.

*Opinion*

SHAPIRO, J. On January 22, 2018, in this insurance claim matter, the court heard oral argument concerning the defendant's motion to dismiss (# 123). After considering the parties' written submissions and arguments, the court issues this memorandum of decision.

## I

## BACKGROUND

The defendant, Massachusetts Bay Insurance Co., contends that the plaintiff, Liberty Transportation, Inc., lacks standing to pursue this matter, since it assigned its rights to recover any insurance proceeds to a third party. The plaintiff alleges that it is entitled to payments under an insurance policy issued by the defendant concerning a commercial building. It contends that the loss which is the subject of the action predated the purchase agreement relied on by the defendant, and, in the agreement, the plaintiff retained the right to continue to use or rent the two units in the building which are the subject of the claim. Additional references to the background are set forth below.

## II

## DISCUSSION

## A

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests." (Internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 326 Conn. 438, 447–48, 165 A.3d 1137 (2017).

"[B]ecause the issue of standing implicates subject matter jurisdiction, it may be a proper basis for granting a motion to dismiss." *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 413, 35 A.3d 188 (2012). "[W]hether a party has standing, based upon a given set of facts, is a question of law for the court . . . and in this respect the labels placed on the allegations by the parties [are] not controlling." (Citation omitted.) *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 348, 780 A.2d 98 (2001). "It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omit-

ted.) *Financial Consulting, LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 226, 105 A.3d 210 (2014).

The defendant contends that the plaintiff made an assignment to Capital Three Development, LLC (Capital), of the plaintiff's right to the insurance proceeds pursuant to the real estate purchase agreement (Agreement) between the plaintiff and Capital.

"An assignment is a transfer of property or some other right from one person (the assignor) to another (the assignee), which confers a complete and present right in the subject matter to the assignee." (Internal quotation marks omitted.) *American First Federal, Inc.* v. *Gordon*, 173 Conn. App. 573, 582, 164 A.3d 776, cert. denied, 327 Conn. 909, 170 A.3d 681 (2017). "An assignment is a contract between the assignor and the assignee, and is interpreted or construed according to rules of contract construction." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 227, 828 A.2d 64 (2003). As such, "[t]he assignment . . . remains valid and enforceable against both the assignor and the assignee." (Internal quotation marks omitted.) *Sunset Gold Realty, LLC* v. *Premier Building & Development, Inc.*, 133 Conn. App. 445, 453, 36 A.3d 243, cert. denied, 304 Conn. 912, 40 A.3d 319 (2012). "Succession by an assignee to exclusive ownership of all or part of the assignor's rights respecting the subject matter of the assignment, and a corresponding extinguishment of those rights in the assignor, is precisely the effect of a valid assignment." *Bouchard* v. *People's Bank*, 219 Conn. 465, 473, 594 A.2d 1 (1991).

An assignment is valid if two elements are satisfied. See *American First Federal, Inc.* v. *Gordon*, supra, 173 Conn. App. 583–84. The first element is that the assignor possessed "an intent to assign—that is, to [confer] a complete and present right in the subject matter to the assignee." (Internal quotation marks omitted.) Id., 583. "The intent to assign may appear from the writing itself, or may be derived from another source, such as the acts of the assignor or the surrounding circumstances." (Internal quotation marks omitted.) Id., 583–84. "No words of art are required to constitute an assignment; any words that fairly indicate an intention to make the assignee owner of a claim are sufficient . . . ." (Internal quotation marks omitted.) *Sunset Gold Realty, LLC* v. *Premier Building & Development, Inc.*, supra, 133 Conn. App. 452–53. "In determining the intent of the parties to an assignment, all the facts and circumstances surrounding the transaction must be taken into consideration." (Internal quotation marks omitted.) *American First Federal, Inc.* v. *Gordon*, supra, 584. The second element of a valid assignment is "that the subject matter of the assignment be adequately identified." Id. The subject matter of an assignment is sufficiently identified if it is "described with such particularity as to render it capable of identification." (Internal quotation marks

omitted.) *Dysart Corp.* v. *Seaboard Surety Co.*, 240 Conn. 10, 17, 688 A.2d 306 (1997).

In interpreting the Agreement, "[w]e accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . Where the language is unambiguous, we must give the contract effect according to its terms." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 13, 938 A.2d 576 (2008). "When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . . [When] there is definitive contract language, [however] the determination of what the parties intended by their contractual commitments is a question of law. . . . It is implicit in this rule that the determination as to whether contractual language is plain and unambiguous is itself a question of law . . . ." *Gold* v. *Rowland*, 325 Conn. 146, 157–58, 156 A.3d 477 (2017).

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 102–103, 84 A.3d 828 (2014).

The Agreement's language is unambiguous. It reflects that the plaintiff intended to assign its right to the insurance proceeds to Capital. Section 12 of the agreement provides: "[Liberty Transportation, Inc.] assumes all risk of loss or damage to the Premises until closing and [Capital] assumes same upon closing. *If any damage to the premises shall not be restored prior to closing [Capital] shall be required to close title to the premises and shall receive in an amount not to exceed the purchase price all insurance monies recovered or recoverable on account of such damage.* In the event of damage or loss [Liberty Transportation, Inc.] shall immediately notify [Capital] thereof and furnish to [Capital] a written statement of the amount of insurance, if any, payable on account thereof." (Emphasis added.)

The express and unambiguous language of § 12

evinces the fact that Capital—to the exclusion of the plaintiff—would solely possess the right to insurance proceeds that are "recovered or recoverable" on the basis of any unrestored damage to the premises. This fact compels the conclusion that the plaintiff intended to assign its right to such proceeds to Capital. Accordingly, the first element of a valid assignment is satisfied.

Moreover, the subject matter of the assignment between the plaintiff and Capital is adequately identified. As previously stated, § 12 of the agreement provides in relevant part: "If any damage to the premises shall not be restored prior to closing [Capital] shall be required to close title to the premises and shall receive in an amount not to exceed the purchase price all insurance monies recovered or recoverable on account of such damage." The unambiguous language of § 12 describes what is being transferred (the right to all insurance proceeds that are recovered or recoverable on the basis of any unrestored damage to the premises) and to whom it is being transferred (Capital). In light of these details, the subject matter of the assignment between the plaintiff and Capital is capable of identification. Accordingly, the second element of a valid assignment is satisfied.

In sum, the two elements of a valid assignment are satisfied in the present case because the express and unambiguous language of § 12 of the Agreement (1) compels the conclusion that the plaintiff intended to assign its right to the insurance proceeds to Capital, and (2) adequately identifies the subject matter of the assignment, the right to all insurance proceeds that are recovered or recoverable on the basis of any unrestored damage to the premises. Accordingly, the plaintiff validly assigned its right to such proceeds to Capital pursuant to agreement.

The plaintiff argues that it did not assign its right to the insurance proceeds because the property damage for which the insurance proceeds are sought occurred before the plaintiff and Capital entered into the Agreement, and § 12 of the Agreement does not cover property damage that occurred before the Agreement was executed.

As stated previously, § 12 of the Agreement provides in relevant part: "*If any damage to the premises* shall not be restored prior to closing [Capital] shall be required to close title to the premises and shall receive in an amount not to exceed the purchase price all insurance monies recovered or recoverable on account of such damage." (Emphasis added.) Section 12 does not expressly draw a distinction between unrestored damage to the premises that occurred before the execution of the Agreement, and such damage that occurred after the plaintiff and Capital entered into the Agreement. Moreover, the use of the word "any" to modify the phrase "damage to the premises" has the effect of

broadening § 12 to cover unrestored damage to the premises, regardless of whether such damage occurred either before or after the Agreement was executed by the plaintiff and Capital. See *Salce* v. *Wolczek*, 314 Conn. 675, 686, 104 A.3d 694 (2014). Accordingly, the plaintiff's first argument is inconsistent with the plain language of § 12.

The plaintiff also asserts that the interest which the plaintiff retained in the property's rental units pursuant to § 17 of the Agreement provides the plaintiff with standing in the present case. Any property (leasehold) interest that the plaintiff retained in the rental units is separate and distinct from any contractual right that the plaintiff allegedly has in the insurance proceeds. In the present case, the plaintiff is seeking to vindicate its alleged contractual right in the insurance proceeds, not a purported property interest. Thus, the alleged interest that the plaintiff retained in the property's rental units does not provide the plaintiff with standing in the present case.

The plaintiff also argues, without documentation, that there is evidence of a separate agreement between the plaintiff and Capital concerning the damage to the two units. The Agreement provides, in paragraph 18, that it may not be modified, except in writing, and signed by the parties thereto. In addition, it contains an integration clause, in paragraph 21, which states, "This agreement contains the entire contract between the parties hereto and no oral statements or promises and no understandings not embodied in this writing shall be valid or binding."

The statute of frauds, General Statutes § 52-550,[1] bars actions based on agreements pertaining to real property which are not in writing and signed by the party to be charged. See *Deutsche Bank Trust Co. Americas* v. *DeGennaro*, 149 Conn. App. 784, 788, 89 A.3d 969 (2014) (modification of written agreement must be in writing to satisfy statute of frauds).

The plaintiff's president's deposition testimony concerning an agreement involving a separate arrangement is unavailing. "The parol evidence rule is a substantive rule of contract law that prohibits the use of extrinsic evidence to vary or contradict the terms of an integrated written contract." (Internal quotation marks omitted.) *Sims* v. *Honda Motor Co.*, 225 Conn. 401, 416, 623 A.2d 995 (1993). "[O]ne purpose of the parol evidence rule is to secure business stability." (Internal quotation marks omitted.) Id., 416–17. As stated above, no written, separate agreement has been provided to the court. Rather, as stated above, the Agreement must be given effect according to its terms.

Thus, the plaintiff lacks standing in the present case because, by virtue of the assignment, it has no legal interest in alleged insurance proceeds that are due and

payable on account of damage to the premises.

## III

## CONCLUSION

For the reasons stated above, the defendant's motion to dismiss is granted. It is so ordered.

* Affirmed. *Liberty Transportation, Inc.* v. *Massachusetts Bay Ins. Co.*, 189 Conn. App.     ,     A.3d     (2019).

[1] General Statutes § 52-550 (a) provides in relevant part: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . . ."